Brinkman v. Rueggesick.

BRINKMAN v. RUEGGESICK *et al., Appellants.*

1.  **Criterion of Testamentary Capacity.**  If a testator at the time
    of making his will knows what he is doing, and to whom he is giv-
    ing his property, his mental capacity is sufficient to satisfy the de-
    mands of the law.  He need not be able to make contracts or to
    manage his estate.

2.  **Will:** INFLUENCE, WHEN NOT UNDUE.  The fact that a legatee had
    an influence over the mind of the testator growing out of confiden-
    tial relations, is no objection to the validity of the bequest, unless
    the influence was used to procure it.

3.  ————— : EVIDENCE OF TESTAMENTARY CAPACITY.  A testator's inca-
    pacity cannot be shown by proof that there were rumors in the
    neighborhood that he was unsound of mind.

*Appeal from Gasconade Circuit Court.*—HON. A. J. SEAY,
Judge.

REVERSED.

This was an action brought by the sisters and broth-
ers of Casper H. Rueggesick, deceased, to set aside his will.
The defendant, Christine Rueggesick, was the sister-in-law
and sole legatee, and defendant Kasten Buschmann was
the executor of the will.

*L. C. Krauthoff* for appellants, as to the testamentary
capacity of deceased, cited *Horne v. Horne*, 9 Ired. 99 ;
*Stevens v. Vancleve*, 4 Wash. C. C. 262 ; 3 Wash. C. C.
580 ; *Stubbs v. Houston*, 33 Ala. 555 ; *Banks v. Goodfellow*,
Law Rep. 5 Q. B. 567 ; *Kinne v. Kinne*, 9 Conn. 102 ; *Potts
v. House*, 6 Ga. 324, 350 ; *Hovey v. Chace*, 52 Me. 304, 314 :
*Blanchard v. Nestle*, 3 Denio 37 ; *St. Leger's Appeal*, 34
Conn. 434, 448 ; *Kirkwood v. Gordon*, 7 Rich. (S. C.) 474 ;
*Daniel v. Daniel*, 39 Pa. St. 191, 207 ; 1 Whart. & Stille
Med. Jur., §§ 19, 34 ; 1 Jarm. on Wills, pp. 50, 53 ; Ray
Med. Jur., p. 313, note 2 ; *Dunham's Appeal*, 27 Conn. 192,
204.

*Rudolph Hirzel* for respondents, on the same point,

cited *Harvey v. Sullens*, 46 Mo. 148 ; *Benoist v. Murrin*, 58 Mo. 307; *Young v. Ridenbaugh*, 67 Mo. 574; *Harvey v. Sullens*, 56 Mo. 372.

NAPTON, J.—The judgment in this case must be reversed and the cause remanded, because of what we understand to be an erroneous criterion adopted by the judge, of the testamentary capacity of the testator. The views of the court who tried the case without a jury were expressed in a series of instructions, which are as follows : 1. "Although the evidence may show that the testator had many lucid intervals, yet if it appears that even in such intervals he could not manage his own affairs or transact any business, then he was wholly unable to make a will. 2. Although it may appear from the evidence that the testator could and did work on the farm, and speak in a reasonable manner concerning such occupation and his work as a farm hand, yet, if it further appear that the said testator was unable to transact any business with other parties and to make any contracts and pursue the avocations and make the transactions of a common farmer, then said testator was unable to make such will, and the same must be rejected. 3. If it appear that the testator never took charge of his own business affairs, and was incapable of doing so, and knew nothing of his means or property, and never managed his affairs, and was unable so to do, then he was incapable to make said will. 5. If the court believe from the evidence that the mind of the testator was so unsound or weak as to render him incapable of managing his affairs, it will find that the testator had not sufficient capacity to make a will. 6. Although the court may believe that no influence was exerted, at the time of making the will, upon the mind of the testator, yet if it further believe that an undue influence had been acquired over his said mind, either through confidential relations existing between him and the devisee or otherwise, and that such influence operated on the testator in the dispo-

sition of his property, it will find that the paper propounded is not his last will. 7. The record evidence introduced was proper to show the interest of Kasten Buschmann in this proceeding, and should be considered by the court in judging of the credibility of his testimony." To the giving of each and every one of these instructions the defendants objected and excepted.

The following instruction asked by defendants was refused: "The court sitting as a jury is bound to presume that Casper H. Rueggesick was of sound mind and capable of disposing of his property by will at the time the will was executed, unless from the evidence in the cause it finds that he was insane or of unsound mind, and that the said will was made while in that condition," to which action of the court the defendants excepted.

In glancing over the multitude of cases decided on this subject, one cannot but be struck by the force of Judge 1. CRITERION OF Redfield's observations in chapter 4, § 15, 6 TESTAMENTARY CAPACITY. of the first volume of his treatise on wills. "We have no instrument," observes the author, "by which we can assume to measure the extent of mental capacity. Each case will have to be decided upon its own peculiar facts and circumstances, and somewhat too upon the peculiar bias and theory of the trier of the fact. Hence the decisions do not bear the appearance of uniformity or consistency. It is impossible they should be consistent, when they have to be made by such a variety of courts, acting upon such contrariety of facts and circumstances. Even the decisions of the same court, or the same judge, do not always appear to others, as they seemed to themselves, to harmonize with each other in regard to questions of law or of fact, and especially the latter." The author then, proceeds to observe that, "The result of the best considered cases on the subject seems to put the *quantum* of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction, or in popular phrase, that the testator should at the time of executing

the will, know and understand what he was about.    *
*    It is sufficient if the testator knew what he was doing
and to whom he was giving his property." And it is con-
ceded in most of the cases that a man may be capable of
making a will, and yet incapable of making a contract, or
managing his estate. Ray Med. Jur., p. 313; 2 Redfield
on Wills, chap. 4, § 10; *Thompson v. Hyner*, 65 Pa. St. 368;
*Stubbs v. Houston*, 33 Ala. 555. Assuming these positions
to be correct and in accordance with previous decisions of
this court, it is manifest without any detailed criticism of
each instruction that the tenor of the declarations of law
made by the circuit court cannot be reconciled with these
views.

The sixth instruction relative to undue influence is
objectionable, not only because there was no evidence to
2. WILL: influence, sustain it, but because it asserts an unten-
when not undue. able proposition. The mere fact that an in-
fluence exists, brought about by confidential relations, is
no objection to the validity of a bequest, unless such influ-
ence by the friend or relative was used to procure such
legacy. The doctrine of this instruction would, in all cases,
prevent one from discharging the obligations imposed by
friendship or favors received.

The facts of the present case are somewhat peculiar,
and may be briefly stated, not with any view to determine
the questions of fact one way or the other, but to indicate
the true criterion of testamentary capacity which we think
ought to govern the case. The testator, it seems, came to
Gasconade county twenty or thirty years ago, and lived
with his brother and worked on his farm, without com-
pensation, until his brother's death, and continued to reside
there with his sister-in-law, the legatee in this case. There
is no pretense that he was afflicted with any form of in-
sanity in the usual acceptation of that term, or of what
writers on medical jurisprudence term *dementia*. But, ac-
cording to the testimony of his sister, Anna Brinkmann,
he had a sun-stroke in Illinois, and though before that

capable of reading and writing, had after that been regarded as a weak-minded man, who took no interest in anything but his farming occupation, in which it seems he was quite intelligent. He cared nothing for money, and had no business transactions or contracts with any one; never attended elections or spoke of matters of public concern. Upon the death of his brother, he inherited from his estate about $500, which the administrator took to him, but which he declined receiving, and it was handed to his sister-in-law, the present defendant. Shortly before his death, he sent for Buschmann, the administrator above referred to, asking him to write his will. The witness says: "He told me what he wanted to put in his will, and I wrote it in conformity to his wishes. He could not understand English, and I translated the will and explained it to him, and he said it was just as he wanted it. Mrs. Rueggesick, the legatee, took no part in the matter." The two subscribing witnesses testified to the same thing, and all three were of opinion that the testator was in his right mind and knew what he was doing. This will left all the little property he had, which, in fact, was the $500 that came from his brother's estate, to Mrs. R., his brother's widow, with whom he had lived all his life, since he came to this country. Nothing could seem more natural and proper. Gratitude, affection and long association would seem to suggest such a disposition. True, he had brothers and sisters living, but it does not appear that his association with them had been intimate or resulted in any favor to him, nor that their circumstances were such as to have suggested such a donation as needed for their comfort.

Several witnesses were allowed by the court to answer questions in regard to the general rumor in the neighbor-3. ——: evidence hood as to the testator's soundness of mind. of testamentary capacity. We have not been able to find any authority authorizing such evidence. Nor have we been able to conjecture any grounds upon which, on general principles,

it would be admissible.   Where the subject of inquiry is
the concurrence of many voices to the same fact and not
the truth or falsity of the fact itself, evidence of general
reputation, reputed ownership, public rumor, general noto-
riety and the like, though composed of the speech of
third persons not under oath, Mr. Greenleaf says, is ad-
missible, not as hearsay, but as original evidence.  But
here the question at issue was the fact of the testamentary
capacity of the testator or his want of such capacity.   The
rumors of his incapacity might have been used by Busch-
mann to justify his acceptance of the position of guardian,
to which he was appointed at one time by the probate
court, just as a rumor that a debtor was insolvent at the
time of an alleged fraudulent preference of a creditor is
competent evidence tending to show that his preferred
creditor had reasonable cause to believe him insolvent.   In
these cases the testimony is admissible on the ground that
the belief of men as to matters of which they have not
personal knowledge, is reasonably supposed to be affected
by the opinion of others who are about them.   1 Greenleaf
Ev., chap. 5, § 101, note.   But the essential fact here is
not the belief of others who are not witnesses, but the fact
of sanity or insanity, which must be established, as any
other fact, by competent evidence.

   As to the proof of Buschmann's appointment of guar-
dian and his subsequent declination of the trust when he
ascertained that the testator was a harmless old man, who
was not likely to squander any property, it is difficult to
see what it had to do with the case.   The circuit court did
not admit it as any proof on the subject of the testator's
sanity, but as having a tendency to affect the credibility of
Buschmann's evidence.   How this could be, does not very
clearly appear, since Buschmann had apparently, so far as
the proof shows, no interest whatever in the matter one
way or the other.   It may be, however, that other evi-
dence may be adduced, which, connected with the facts

proved, would have such tendency, in which event the evidence would be admissible for such a purpose.    Judgment reversed and cause remanded.