## McCulloch v. Campbell.

1. WILLS: *Undue influence.*

The undue influence which avoids a will is not the influence 'which springs from natural affection, or is acquired by kind offices, but it is such as results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. And it must be directly connected with the execution of the will and specially directed towards the object of procuring a will in favor of particular parties.

2. SAME: *Testamentary Capacity: Infirmities of age.*

The infirmities of age and even a partial eclipse of the mind, will not prevent a person from making a valid testament if he can retain in his memory, without prompting, the extent and condition of his property, and understands to whom he is giving it and is capable of appreciating the relations to him and merits of others whom he excludes from any participation in his estate.

3. SAME: *Burden of proving testator's incompetency.*

In will contests the production of a paper in writing, purporting to be the will of the deceased, which is rational on its face, and which is proved to have been executed and witnessed in accordance with the statute, makes a *prima facie* case, and devolves upon the contestant the *onus* of showing the testator's incompetency; and where the contestant had adduced evidence to show the testator's incapacity and rested his case, it was error to exclude the testimony of a witness called to prove the testator's competency, on the ground that he was offered in rebuttal when he should have been examined in chief.

4. SAME: *Instructions as to undue influence.*

In a will contest the court gave the jury the following instruction: "It is not necessary that the exercise of undue influence be proved to the satisfaction of the jury in order to defeat the will, if it is shown by a preponderance of evidence, that such influence was possessed and exercised by some person, or persons, and free agency of the testatrix thereby subordinated to their will." *Held:* That the instruction was unintelligible and erroneous.

5. SAME: *Same.*

For other instructions to the jury on the subject of undue influence, which the court holds were erroneous, see the opinion.—[REP.]

APPEAL from *Washington* Circuit Court.

J. M. PITTMAN, Judge.

*U. M. & G. B. Rose* for appellant.

1.   The court erred in excluding the testimony of John McClellan.   It was certainly pertinent and competent, bearing directly on the point at issue, the mental capacity of testatrix.   It was proper evidence in rebuttal.

2.   Non-expert witnesses cannot give their opinion of the mental capacity of a testator.   Attesting witnesses may do this, but others must confine themselves to the facts.   *19 Ark., 533.*

3.   Experts can only be allowed to testify in reference to hypothetical cases put to them, and not to say what their opinion is on the proof made at the trial.   That is for the jury.   *1 Wharton Ev., 452; 1 Greenl. Ev., 440.*

4.   The burden of proving insanity is on the contestant. All persons are presumed to be sane until the contrary is shown.   *13 Ark., 475; 19 id., 533; 29 id., 151; 31 id., 309; 40 Ark., 512; 43 id., 331; 1 Williams ou Ex., p. 20.*

Review the testimony and contend that there is not the slightest proof of undue influence.

It is not necessary for a testator to subscribe a will in the presence of both the attesting witnesses.   *Sec. 6492 Mansf. Dig.*   It may be *acknowledged* to each of them.

*B. R. Davidson* and *L. Gregg* for appellees.

1.   The refusal to admit John McClellan's testimony was fairly within the discretion of the court, under the circumstances.   He was not put under the rule as the others were ; the evidence on both sides had closed, and then they proposed to examine him.

2.   Whenever a witness testifies to facts, he can give his opinion from the facts as to sanity, etc.   *15 Ark., 555; 17 id., 292.*

3.    The proponents, being plaintiffs in this case, the burden is on them to make out their case.    The statute requires the maker of a will to be of sound mind, and it devolves on the proponent to prove the sanity of the testatrix; that the will was made by a competent testator and executed in due form.    *Sec. 1389, Mansf. Dig.; 17 Ark., 320; 34 Me., 162; 22 id., 438; 8 Mich., 9; 14 id., 309; 39 N. H., 171; 8 Conn., 254; 42 Vt., 658; 25 N. Y. (Ap.), 9.*

The cases cited by appellant's counsel sustain our view. When they were decided, our statutes were different.    Then, the contestant appeared in the Circuit Court and filed his petition to set aside the will.    Then he was plaintiff, and the presumptions were against him, and he must maintain his case. Now, the proponent is plaintiff, and the common law presumption of sanity will not prevail over our express statute.

Review the evidence and contend that it is ample to show mental incapacity and undue influence.

SMITH, J.    This was a contest over the will of Mrs. Elizabeth McClure.    The Probate Court admitted the instrument to probate, notwithstanding the opposition of Thomas J. Campbell, one of the heirs, who alleged that the testatrix was laboring under *senile dementia* and that the will was procured by the undue influence of McCulloch, the executor, and some of the legatees.    But upon appeal to the Circuit Court, the jury, to whom the issues were submitted, found against the validity of the will, and judgment was entered setting it aside.

It is claimed in the motion for new trial that this verdict was against the evidence.    Mrs. McClure was 81 years of age at the date of the execution of the will and was in feeble health.    She had been a woman of strong will and great decision of character; but after her husband's death, which occurred two weeks before the will was made, she was depressed and melancholy.    Her property was of the value of $10,000

or $12,000; and it had been derived altogether or mainly from her husband  Her nearest of kin were some thirty nephews or nieces, who resided in the same village with her or in the immediate neighborhood.  Her favorite nephew was S. G. McClellan.  He had nursed her husband through his last illness, which extended over two or three years, and his devotion had been remembered by the sick man and had been rewarded with an appropriate legacy.  But Mrs. McClure always said that the legacy was not as large as it should have been, and at her instance and request, her husband's executors had released a debt of $300 which this nephew of hers owed the estate. After the loss of her husband, the aged woman invited one of these disinherited nieces to come with her husband and take charge of the homestead.  But they hesitated and finally insisted that a deed to the property should be made to them in advance.  Their conduct in this matter seems to have been resented by Mrs. McClure, who broke up her establishment and went to live for the remainder of her life with S. G. McClellan. And to him she gave by will $2000 in cash and her homestead. And she made his wife residuary legatee after the other bequests were satisfied.

Her favorite niece was Miss Sallie McCory, who had been her constant companion and untiring nurse for many years. The bond of attachment between these two seems to have been a very strong one.  Each doubtless saw in the other a reflection of her own characteristic traits—independence, high spirit, plain-spoken candor.  Besides, Miss McCory's attentions had become indispensable to the comfort of her aunt.  Those attentions had been so assiduous and so disinterested as to touch the heart of McClure, the husband.  He had bequeathed to Miss McCory $2000, although, as the proof shows, he was himself not at all partial to her.  To this niece Mrs. McClure gave by her will $4000.  And to five other nieces and nephews she gave amounts ranging from $200 to $1000.

This is certainly not an inofficious testament. The testatrix does not go outside the circle of her nearest relatives to select the objects of her bounty. The chief beneficiaries were persons to whom she was tenderly attached and for the best of reasons : they were useful, dutiful and affectionate to her. From their characters and situation they had no doubt acquired considerable influence over Mrs. McClure. But there is no evidence that this influence was exerted for the procurement of a will in their own favor, or that they were even aware of its provisions until after its publication. One witness indeed stated that he had heard Mrs. McClure say that S. G. McClellan and Miss McCory had been teasing her about making a will. But it is not unlawful to make suggestions of this nature, nor even to procure a testamentary provision in one's favor by fair persuasion and kind offices. *Rogers v. Diamond, 13 Ark., 475; McDaniel v. Crosby, 19 id., 551.*

As we understand the rule, the fraud or undue influence, which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. *Rutherford v. Morris, 77 Ill., 397; 1 Redfield on Wills, 3d ed., ch. 10, sec. 30, pp. 523-4.*

1. Wills: Undue influence.

The will was indeed made upon the suggestion of McCulloch. But he was the trusted agent and business manager of Mrs. McClure, and was therefore entitled to give advice on such a subject. The will, moreover, contains no provision in

his favor, although he is named as executor; and there is no reason to believe that he sought to influence her for or against any of her relations.

Upon the subject of testamentary capacity, the testimony is in hopeless conflict. Even the attesting witnesses to the will and the physicians who attended upon Mrs. McClure during the latter part of her life are diametrically opposed to each other on this point. The witnesses for the proponent declare that Mrs. McClure read the newspapers, conversed intelligently and made contracts; and they could discover no indications of mental derangement until a week or two before her death, which took place some two and a half months after the will was executed. On the other hand the evidence adduced by the contestants tended to show progressive decay in her mental faculties for two or three years before her death; that some of her brothers had died imbeciles and she had the same wooden expression, staring into space; that she was childish, forgetful and incapable from age and infirmities of transacting any serious business. In this conflict the verdict cannot be disturbed for want of evidence. No doubt the vigor of Mrs. McClure's mind had suffered some impairment. In extreme age the mind commonly declines with the body; the memory fails and the other faculties become weakened. Whether the decay in this case had proceeded to the extent of imbecility was peculiarly a question for the jury.

2. SAME: Testamentary capacity : Infirmities of age.

Old age, physical infirmities, and even partial eclipse of the mind would not prevent her from making a valid testament, if she knew and understood what she was doing—if she could retain in her memory without prompting the extent and condition of her property, and comprehend to whom she was giving it, and be capable of appreciating the deserts and relations to her of others whom she excluded from participation in her estate. *1 Redfield on Wills*, ch. 4, secs. 7—15, and cases there cited; *Tobin v. Jenkins, 29 Ark., 159; Delafield v. Parish, 25*

McCulloch v. Campbell.

*N. Y., 22–29; Kempsey v. McGinnis, 21 Mich., 141; Brinkman v. Rueggesick, 71 Mo., 553.*

The court, however, tried the case upon the erroneous theory that the burden of proving the sanity of the testatrix was upon the executor who propounded the will. This is evident from the charge of the court and from its refusal of requests; and also from its ruling upon matters of evidence. 3. SAME: Burden of proving testator's incompetency.

Thus after both parties had adduced evidence to maintain the issues on their respective sides, and the contestants had rested their case, the proponent offered to prove by John McClellan that he had been intimately acquainted with the testatrix all his life, and knew her well at the time of the execution of the will; that about that time he frequently conversed with her, and had full opportunity to observe her conduct and demeanor, and that he could say that she was of sound mind.

This testimony was excluded by the court.

The record does not show the reason for its exclusion, but it could only have been upon the notion that the witness was called out of time, being offered in rebuttal when he should have been examined in chief.

There is some confusion in the reported cases on the adjustment of the burden of proof of insanity in will contests. But we think the weight of authority, both in England and this country, establishes the rule that the production of a paper writing, purporting to be the will of a deceased person, which is rational on its face, and which is proved to have been executed and witnessed in accordance with the statute, makes a *prima facie* case and devolves upon the contestants the *onus* of showing the testatent's incompetency. This rule rests upon the presumption that all men are sane until the contrary is proved. *1 Williams on Executors, 6th Am. ed., p. 24, et seq.; 1 Redfield on Wills, ch. 3, sec. 4; Schouler on Wills, secs. 173–4; 18 Cent. Law Journal, 282,* where the American cases are collected with some care by Mr. Elisha Greenhood.

To this rule we have given in our adhesion. *Rogers v. Diamond, 13 Ark., 479; McDaniel v. Crosby, 19 id., 533; Tobin v. Jenkins, 29 id., 151; Jenkins v. Tobin, 31 id., 309.*

It is true our statute of wills requires a testator to be of sound mind. *Mansf. Dig., secs. 6490–1.* But the same thing is required in order that a person may be held responsible for a crime. *Id., secs. 1495, 1497, 1499.* Yet upon the trial of an indictment, the State never goes into evidence of the prisoner's sanity until he has given evidence of insanity.

It is also true that, since the rule was first announced by the court, the procedure in will contests has been changed. By the practice then in force, the contestant filed his petition in the Circuit Court to set aside the probated will, whereupon an issue of *devisavit vel non* was made up and in this issue the contestant was the plaintiff. Whereas, now the heir, desiring to contest, takes his appeal from the order of the Probate Court admitting the instrument to probate, and becomes the defendant in the proceeding. But the burden of proof of insanity and the presumption of soundness of mind are not changed.

4. SAME:
Instructions as to undue influence.

The court also erred in its directions to the jury on the subject of undue influence. The following were given at the instance of the contestant:

7. " It is not necessary that the exercise of undue influence be proved to the satisfaction of the jury, in order to defeat the will, if it is shown by a preponderance of evidence that such influence was possessed and exercised by some person or persons, and free agency of the testatrix thereby subordinated to their will."

11. " I charge you that if you find, from the evidence, that parties surrounding Mrs. E. P. McClure, and who are legatees under the will, falsely told her that Tom Campbell was threatening to have the will broken, to operate upon her fears or to

induce her to give or devise her property to them, and such one or ones did procure the will and get a legacy thereunder, this should be considered by you in determining whether or not there was fraud or undue influence in procuring the will of Mrs. McClure."

14. " I charge you that·if you believe, from the evidence, that falsehoods were told to Mrs. E. P. McClure to raise prejudice in her mind against those who would be the natural objects of her bounty, and by. contrivance or management she was kept from intercourse with her relations, to the end that these impressions thus formed to their disadvantage might not be removed, such contrivance may be considered by you, and if in your judgment they amount to fraud, these will render invalid the will executed under such false impressions, and the jurors are to judge of the facts from the evidence before them."

17. " If you find, from the evidence, that a person's mind in extreme old age be intelligent, competent to converse, to understand and transact business with fair bodily strength, and yet such a person has such a fear and dread of relatives who may have surrounded them, and on whom they may have felt they were perfectly dependent, that their nervous system may be wholly overcome, and they become childish and an instrument in the hands of those about them, so as to have no power to exert their mind in opposition to their wishes or to resist their importunities, and if you believe, from the evidence, that such was the case upon the issues herein, and that Elizabeth P. McClure was so controlled, you will find against the will."

19. " I charge you that importunity, coercion, such as the testatrix has no courage to resist, or moral command asserted and yielded to for the sake of peace and quiet, or of escaping from distress of mind or social discomfort, if carried to a degree in which the free play of the testatrix's judgment, discretion or wish is overborne, will constitute undue influence,

though no force is either used or threatened, and if, from all the evidence, you find such undue influence was used, you will find for the contestants."

The first of these instructions in unintelligible; and we can find no evidence in the record to which the remaining four are applicable.

The judgment is reversed and a new trial ordered.