### HUFFAKER v. BEERS.

### Opinion delivered May 16, 1910.

WILLS—CONTEST—TEST OF TESTAMENTARY CAPACITY.—It was error, in a will contest, to instruct the jury that a testator, to be capable of making a will, must have "a full knowledge of the property he possesses;" the true test with respect to his property being not whether he knew, but whether he was mentally capable of knowing, what property he possessed.

Appeal from Conway Circuit Court; *Hugh Basham,* Judge; reversed.

#### STATEMENT BY THE COURT.

Appellants were proponents of the last will of William Moore. Appellees contested the will upon the sole ground that the testator "did not have sufficient mental capacity to make a valid will at time he executed the will offered for probate."

The court granted the following prayers of appellants for instructions:

"1. The contestants admits that the paper read in evidence as the will of William Moore was executed by him as his will; that it is in due form, and was properly executed and witnessed, and should be sustained by you, unless the proof

shows that at the time of its execution he was mentally incapable of making a valid will.

"2. The law presumes that William Moore had sufficient mental capacity to make a valid will. And you should sustain the will, unless you find from the evidence that at the time he executed it he was incapable from mental weakness of appreciating and understanding the nature and character of the act.

"3. One who has sufficient mental capacity to understand the nature of the act has a right to will his property to whom he pleases. With the motives of William Moore, or with the justice or injustice of his acts, you have nothing to do. The sole question for you to determine is whether he had sufficient mental capacity to make a will. And, unless the proof shows that he did not have such capacity, you should sustain the will; the burden of proof being upon the contestants to show that he did not have sufficient mental capacity to make a will.

"4. Old age, physical infirmities and even partial eclipse of the mind would not prevent him from making a valid will; if, at the time he signed the will, he knew and understood what he was doing, if he could retain in his memory, without prompting, the nature and extent of his property, and comprehend to whom he was giving it, and be capable of appreciating the deserts and relations to him of those whom he excluded from participating in his estate, he had the capacity to make a will."

And the court also granted the following prayers of appellees:

"1. Gentlemen of the jury, a paper has been offered for probate in this case which purports to be the last will and testament of William Moore, deceased. It is contended that this will is not valid because Mr. Moore at the time of its execution did not possess sufficient mental capacity to make a will. His mental capacity is a question of fact for you to determine from the evidence in this case."

To the giving of which instruction the proponents at the time excepted.

"2. The law provides that only persons of sound and disposing mind and memory can make a valid will. * * * What is meant by this is not that the testator shall at the time be actually insane. Weakness of intellect, whether it arises from extreme

old age, from disease, from great bodily infirmities or suffering, or from all these combined or from other causes, when sufficient in degree, may render a person incapable of making a will.

"3. A person of sound mind, within the meaning of the law in this case, is one who has a reasonable knowledge of the act he is engaged in, a full knowledge of the property he possesses and its extent, and a reasonable perception and understanding of the disposition he desires to make of it and of the persons he desires to be the recipients of his bounty and a capacity to recollect and comprehend the nature of the claims and legal rights in his estate of those who are the natural objects of his bounty, of their relationship to him and his obligations to them. Unless the testator in this case possessed this capacity, then in law he is not capable of making a will, and you should so find."

To the giving of which instruction the proponents at the time excepted.

"4. You are further instructed that the burden of proof is on the contestants in this case to show by a preponderance of the evidence that at the time of the making of the will the testator was of unsound mind and incapable of making a valid will, a bare preponderance however being sufficient."

To the giving of which instruction the proponents at the time excepted.

After hearing the evidence and the above instructions the jury returned a verdict in favor of appellees. Judgment was entered according to the verdict, and this appeal has been duly prosecuted.

*Sellers & Sellers,* for appellant.

The test of testamentary capacity is that the testator shall have capacity to retain in memory without prompting the extent and condition of his property, and comprehend to whom he is giving it. 87 Ark. 273; 49 Ark. 367; 5 S. W. 590; 64 Ark. 349; 42 S. W. 536. The opinion of the witness was sought upon the identical mental states and processes given as the test of testamentary capacity. 49 Ark. 367; 64 Ark. 349; 1 Whar. & Stille, Med. Juris., § 67; 1 Clevenger, Med. Jur., § 287; 54 Ark. 588; 66 Ark. 629. It is for the jury to say whether the testator had the requisite capacity. 3 L. R. A. (N. S.) 172.

It is error to give contradictory instructions. 72 Ark. 440; 55 Ark. 393; 59 Ark. 105. Failure to recognize friends in old age is no proof of incapacity to make a will. 49 Ark. 367; 66 Ark. 623.

*W. P. Strait,* for appellee.

The question of the testator's capacity has been settled by the jury, and should not be disturbed. 57 Ark. 574; 23 Ark. 208; *Id.* 32; 13 Ark. 474; *Id.* 285; 25 Ark. 482; 27 Ark. 517; 46 Ark. 511; 51 Ark. 324. Even though a preponderance of the evidence is against it. 13 Ark. 306; 26 Ark. 360; 19 Ark. 121; 23 Ark. 50; 10 Ark. 138; 25 Ark. 11. A new trial will not be had unless there is a total want of evidence to sustain the verdict. 24 Ark. 251; 21 Ark. 306; 51 Ark. 334. It is not error to exclude evidence of facts already proved. 14 Ark. 505; 5 Ark. 680. Appellee's instruction No. 3 was correct. 87 Ark. 273. The instructions are to be construed as a whole. 28 Ark. 63; 19 Ark. 96; 17 Ark. 292. If upon the whole record the verdict is right, it will not be disturbed. 44 Ark. 556; 19 Ark. 677; 43 Ark. 296; 46 Ark. 552; 10 Ark. 9.

WOOD, J., (after stating the facts). Instruction number 3 given at the request of appellees did not give the jury the correct guide for determining testamentary capacity. It made actual knowledge, rather than capacity to know, the test. There is a wide difference between the two, and one necessary to be observed in order to correctly declare the law where testamentary capacity is the issue. A testator might not have "full knowledge of the property he possessed and its extent," and yet, if he has the mental capacity to know about it, his will in the absence of fraud would nevertheless be valid. One might not know the natural objects of his bounty and their relation to him, and yet, if he had the capacity to know or to be informed about them and to comprehend his relation to them when so informed, his will would not be invalid because he did not have actual knowledge or "a reasonable perception and understanding of the persons he desired to be the recipients of his bounty." We endeavored to make clear the distinction of which we are speaking in the recent case of *Taylor* v. *McClintock*, 87 Ark. 273. In that case we had under consideration insane delusion as an alleged ground of incapacity. Here the alleged ground is

senile dementia, or general insanity from that cause. But, as we said in *Taylor* v. *McClintock, supra*: "The test of testamentary capacity is necessarily the same, whether the insanity be attributable to dementia or insane delusion—paranoia."

In the above case we approved an instruction which prescribed the following as a test of testamentary capacity: "By soundness of mind in this connection is meant the capacity of the testator to comprehend the nature of the transactions in which he is engaged at the time; to recollect the property to be disposed of, and the persons who would naturally be supposed to have claims upon him, their deserts and relation to him; and to comprehend the manner in which the instrument would distribute the property among the objects of his bounty; if one who, at the very time he undertakes to make a will, is possessed of sufficient intelligence and memory to fairly and rationally know and comprehend the effect of what he is doing, the nature and condition of his property, who are or would be natural objects of his bounty, and his relations to them, the manner in which he wishes to distribute his estate among or withhold it from them, and the scope and bearing of the will he is making, * * * he has capacity to make a will."

The Supreme Court of Connecticut in *Havens* v. *Mason,* 78 Conn. 410, 3 L. R. A. (N. S.) 172, passed on an instruction similar to the above except that it had also the following: "It is for the jury to say whether or not at the time of the execution of the will Mrs. Stevens knew that she was making a will, knew what property she possessed, and knew the natural objects of her bounty; and if you find that these essentials she knew and understood at the time of the execution of this will, then the will should be sustained."

The court approved the instruction as sanctioned by us above, but condemned as error and reversed the cause on account of the added language last above quoted. The court said: "The first of these sentences states a sound legal proposition. But, while one possessing the intelligence and memory which it describes has, as matter of law, sufficient testamentary capacity, it does not follow that one without actual knowledge of all the various matters specified may not have it also. Persons of large means rarely know precisely what property they

own, or even the nature and present condition of every considerable item of it."

"If by the class described as those who were or should be the natural objects of her bounty was meant her heirs at law, as seems probable by the reference to their relations to her, a test of capacity was imposed which was too severe. She had fourteen nephews and nieces living, who were her next of kin. She might have had sufficient testamentary capacity, without knowing whether all were alive, or whether any other who might have died previously had left issue that then represented them." See also note in 3 L. R. A. (N. S.) to the above case.

It will be noted that in the instruction approved by this court in *Taylor* v. *McClintock, supra,* and other cases there cited, the test is capacity to know, and not actual knowledge, whereas the instruction under consideration in the instant case makes actual knowledge, and not capacity to know, the test. To be sure, if one knows and understands what he is doing when he executes his will, and can retain in his memory, without prompting, the nature and extent of his property, etc., then he has the testamentary capacity. But one may not actually know and understand, and yet have the capacity to do so. Therefore instruction number four given at the instance of appellants does not cure the error of instruction number three given at appellee's request. Nor is this error cured by other instructions in the case. The error of instruction number three is not one of mere verbiage that could and should have been corrected by specific request of appellants. The instruction is an erroneous statement of a fundamental rule of the law applicable to the issue being tried and essential to its correct determination. The error is one of substance, and not of mere form. A general objection is sufficient.

Other assignments of error are argued in the briefs, and have been considered, but the above is the only prejudicial error we find in the record. For this the judgment is reversed, and the cause is remanded for new trial.

McCULLOCH, C. J., (dissenting). This case seems to have been submitted to the jury upon exceptionally clear instructions, save number three, and they were correct. The record is entirely free from error in other respects, and the verdict is well supported by the testimony. Instruction number three contains

some language which submits an incorrect test of testamentary capacity, but, considering this instruction as a whole and in connection with the other instructions given at the request of each party, I do not see how the jury could have been misled by it. The instruction is not one that is inherently wrong, though it is to some extent ambiguous and calculated to mislead. It should, therefore, have been met by a specific objection to the particular language which was objectionable. It is manifest from all the instructions that the court intended to make capacity, and not actual knowledge, the test, and the jury must have so understood. If a specific objection had been made to the objectionable language in the instruction, so as to call attention directly to it, the court would no doubt have modified it so as to harmonize it with the other instructions. I do not think the verdict should be disturbed.

Mr. Justice HART agrees with me.