EMERICH *v.* ARENDT.

Opinion delivered March 11, 1929.

*A. J. Newman* and *Geo. W. Emerson,* for appellant.

*Downie & Schoggen,* for appellee.

McHANEY, J. William Emerich, single, late of Little Rock, died testate, his will being admitted to probate in Pulaski County. Specific bequests of $50 each were made to his brother and two sisters, and $10 each to the children of two deceased brothers. All the residue of his estate was devised and bequeathed to the appellee, Mrs. John C. Arendt, widow of a nephew of the testator, who was also named executrix without bond. An appeal was prosecuted from the order of probate to the circuit court, where a petition was filed by appellants, who are some of the col-

lateral heirs, attacking the validity of the will on the grounds of alleged mental incapacity to make a will, and undue influence of the appellee and her deceased husband. The case was tried to a jury on conflicting evidence, that of appellants tending very strongly to show mental incapacity.

The testator was born in Germany, and came to this country when quite young. At about the age of eleven, while living in the State of Illinois, he was stricken with typhoid, which left him almost, if not entirely, deaf and dumb. He was wholly uneducated, never attended school, and was unable to read or write, not being able to sign his name. He communicated with strangers with difficulty, but was able to make himself understood by his intimates. He was not insane, and appellants do not so insist, but they do contend that he did not possess sufficient mental capacity to remember, without prompting, the extent of his property, what he owned, nor to whom he was giving it, nor the deserts and relations to him of his other heirs who were practically excluded from participating in his estate. On the other hand, the testimony on behalf of appellee tended to show that the testator had sufficient mental capacity to meet the requirements of the law in order to make a valid will. It was shown that, although he possessed all the peculiarities above stated, he came to Little Rock some 45 years ago, and, in spite of his many handicaps, accumulated an estate of from $15,000 to $20,000 by hard labor and frugality. He owned three lots and six houses at 13th and Ringo Streets, Little Rock, rented his property himself, collected the rents, and made deposits in the bank. He was able to count money readily, and evidently knew its value. He could read the lips of some of those speaking to him, if they would speak slowly and distinctly, and could make those who were familiar with his manner of communication understand him.

There was much testimony on both sides, but we think the above statement of the effect thereof sufficient for this opinion. The jury found for the will.

We think this was a case for the jury. Evidently appellants so thought, as there was no request for a directed verdict in their favor. The only question was the mental capacity of the testator, no proof being offered of undue influence and no instructions asked or given thereon. The verdict of a jury is binding on this court if there is any substantial evidence to support it, and, as we have seen, the evidence as to capacity is in sharp conflict.

The burden of proving incapacity is always on the contestant, as the presumption is that the testator is sane until the contrary is established. *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590. It was there said:

"Old age, physical infirmities, and even partial eclipse of the mind would not prevent her from making a valid testament, if she knew and understood what she was doing—if she could retain in her memory, without prompting, the extent and condition of her property, and comprehend to whom she was giving it, and be capable of appreciating the deserts and relations to her of others whom she excluded from participation in her estate. 1 Redfield on Wills, ch. 4, §§ 7-15, and cases there cited; *Tobin* v. *Jenkins,* 29 Ark. 159; *Delafield* v. *Parish,* 25 N. Y. 22-29; *Kempsey* v. *McGinnis,* 21 Mich. 141; *Brinkman* v. *Rueggesick,* 71 Mo. 553.''

This statement was quoted with approval in the celebrated case of *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405, where this court further said:

"The test relates, not to the moral quality of the act done, but to the mental capacity of the testator to do what he did. The question is not whether the testator did actually appreciate the deserts of and relation to him of the one excluded, but whether he had, at the time, the capacity to do so. 'It is not required that he shall in fact correctly ascertain the legal status of each person who apparently stands in natural relation to him. In the exercise of reason, he may move upon false or insufficient evidence, or by mistake of law, and thus exclude from his bounty those whom, but for this error,

he would have recognized. Stupid error, either in his reasoning or conclusion, is not lack of testamentary capacity.' *Smith* v. *Smith,* 48 N. J. Eq. 566; 1 Sharton & Stille, Med. Jur., § 767, p. 73.

"There is a clear distinction between having the capacity to comprehend deserts and actually comprehending them—the former the law requires, the latter it does not."

Bearing these rules in mind, and the distinction "between capacity to comprehend deserts" and "actually comprehending them," we cannot say, as a matter of law, that the testator was mentally incapacitated.

Appellant suggests that several instructions given at appellee's request are wrong. Only general objections were made, and no error is now pointed out regarding them. Also it is said that a requested instruction, No. 5, should have been given. We do not set these instructions out and comment on them separately, as it would unduly extend this opinion. No. 5 was substantially covered by other instructions. We find that the court fully and fairly instructed the jury, submitting the respective contentions of the parties.

No error appearing, the judgment must be affirmed.