SULLIVANT *v.* SULLIVANT.

5-2836                                    364 S. W. 2d 665

Opinion delivered February 11, 1963.

*Levine & Williams,* for appellant.

*Joe W. McCoy* and *Cole & Scott,* for appellee.

FRANK HOLT, Associate Justice. This is an appeal from the order of the Grant County Probate Court admitting the will of F. D. Sullivant to probate and dismissing the appellants' contest of the will.

Francis D. [F. D. or Bud] Sullivant, age 78, was found dead on the side of a road in Grant County, the county of his residence, on September 14, 1961. He was divorced and had no children. He was survived by three brothers, Austin, Raybon and Birt Sullivant, a sister, Della Lybrand, and two nephews, Carl and Earl Appling, the sons of a deceased sister [Jennie Appling] of Sullivant.

On September 16, 1961, a petition for the appointment of an administrator was filed by Austin Sullivant. All of the above named heirs, except Birt Sullivant, joined in this petition. The petition was granted on September 18, 1961, in an order appointing the National Bank of Commerce of Pine Bluff, Arkansas, as administrator and issuing Letters of Administration to said bank as administrator of the estate.

On December 8, 1961, the Probate Court [after a two-day trial, December 5 and 6] rendered its Order and Judgment wherein the court admitted to probate the questioned will; denied and dismissed the appellants' petition challenging the validity of the will; appointed Birt Sullivant executor; removed the aforesaid bank as administrator and cancelled the Letters of Administration previously issued to the bank as administrator of the estate. The appellants appeal from this Order.

On appeal, this cause comes here *de novo* and this court will affirm unless the order of the Probate Court is against the preponderance of the evidence. *Parette* v. *Ivey*, 209 Ark. 364, 190 S. W. 2d 441.

Appellants' first point for reversal includes questions concerning the making and proof of the will: No will was introduced in evidence; there is no will in the record; and the proponent failed to prove by competent testimony the execution of the will of F. D. Sullivant.

A study of the record in this case reveals that the will in question and proof of will were properly filed, together with the petition for probate thereof, on September 22, 1961. On the same date the record recites that the court entered an order in which the said will is referred to in these words: " * * * on this date Birt Sullivant presented to the court a will, proof of will attached to a petition for admission thereof to probate * * * " In this order the court granted the appellants sufficient time to file any pleadings desired to contest the will and set the case for trial.

At the trial the two attesting witnesses to the will testified in support of the validity of the will. James C. Cole, the attorney who drafted and witnessed the will testified in part:

"Q. In the file here it is filed what proposes to be the last will and testament of F. D. Sullivant. Is that your signature on that?

A. Yes sir. That is my signature."

Lois Green, legal secretary who typed and **witnessed** the will, testified in part:

"Q. I hand you what proposes to be the last will and testament of Mr. Sullivant. Is that your signature?

A. Yes sir, it is.

Q. This will was dated October 11, 1960. Were you a member of Cole and Scott at that time?

A. Yes sir.

Q. This is your signature?

A. Yes sir.

* * *

Q. I notice in this will that you and Mr. Cole initialed the first page of it. * * * Is that your initial?

A. Yes sir, I did."

Also, in the final Order from which comes this appeal, the court found, among other things, that:

"The decedent left as his last will and testament an instrument dated the 11th day of October, 1960, and due and proper proof of the execution and publication thereof in the manner required by law has been made. The decedent, at the time the will was made, was of sound and disposing mind and memory and executed same as his own free will and act and not as a result of coercion, fraud or undue influence. Said will is entitled to be admitted to Probate as the last will and testament of the decedent * * * . IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED that the instrument dated the 11th day of October, 1960, tendered to this court as the last will and testament of the decedent, should be and is hereby admitted to probate as such * * * ."

The record also reflects that a copy of said will is included in the record. The two attesting witnesses, James C. Cole and Lois Green, presented proper and sufficient proof of the will in compliance with Ark. Stats. §§ 60-403 and 62-2117. We find the questioned will was presented to and examined by the court, and further, was admitted to probate and made a part of the record in this case.

As a part of Point One the appellants also urge for reversal that the proponent of the will failed to prove by competent testimony the execution of the will by F. D. Sullivant. They assail the competency of the testimony of James C. Cole as being based upon privileged communication since Mr. Cole drafted and witnessed the will. Mr. Cole's testimony was proper and competent. *Bradway* v. *Thompson*, 139 Ark. 542, 214 S. W. 27; *Peoples National Bank* v. *Cohn*, 194 Ark. 1098, 110 S. W. 2d 42. Also, Mr. Cole's testimony is challenged since he was employed by the proponent of the will to represent the estate. When the will contest developed, although Mr. Cole continued as an attorney of record, another attorney, Joe W. McCoy, was also employed who tried the case chiefly in the Probate Court and presented the case on oral argument before this court. In *Rosenbaum* v.

*Cahn,* 234 Ark. 290, 351 S. W. 2d 857, we held to be qualified, as an attesting witness, the attorney who also drafted the will and was named therein as attorney for the estate. In the case at bar, Mr. Cole drafted the will and was not named in the will in any manner. Since Mr. Cole was not named in the will as a beneficiary or otherwise, we hold Mr. Cole was qualified to testify as an attesting witness under Ark. Stat. § 60-402 (c).

Appellants' second and remaining point for reversal includes the contention that F. D. Sullivant was not competent to make a will and that the will was procured by fraud and undue influence.

The burden of proving mental incompetency, undue influence or fraud which will defeat a will is on the party contesting it: *Werbe* v. *Holt,* 218 Ark. 476, 237 S. W. 2d 478; *Walsh* v. *Fairhead,* 215 Ark. 218, 219 S. W. 2d 941; *McWilliams* v. *Neill,* 202 Ark. 1087, 155 S. W. 2d 344; *Smith* v. *Boswell,* 93 Ark. 66, 124 S. W. 264.

Appellants attempt to shift this burden of proof to the proponent of the will by relying on the rule in *Orr* v. *Love,* 225 Ark. 505, 283 S. W. 2d 667. There this court said:

"When it is shown that the will is drawn or procured by a beneficiary, there is a presumption of undue influence * * * . It is incumbent on those, who, in such a case, seek to establish the will, to show beyond reasonable doubt, that the testator had both such mental capacity, and such freedom of will and action, as are requisite to render a will legally valid."

In that case the testatrix made four wills in less than a month. The proponent of the last will, the daughter-in-law, was one of the principal beneficiaries who had her own lawyer prepare the will according to her individual instructions and contrary to the terms of the first will. In the case at bar it is true that Birt Sullivant is the sole beneficiary and that he, his wife, Minnie, and son, Sidney, accompanied F. D. Sullivant to Mr. Cole's office on October 11, 1960, when the will was drafted. However, Mr. Cole was already representing F. D. Sullivant on two

matters[1] and had never represented Birt Sullivant. The will was drafted according to the explicit directions of F. D. Sullivant without any prompting or instructions from Birt or his family. F. D. paid for the will himself. These facts are not sufficient to shift the burden of proof to the proponent in this case.

We proceed now to a discussion and decision on the question of whether appellants have shown circumstances which preponderate in favor of a finding of mental incompetency, fraud or undue influence. We find no evidence of fraud in this case.

The questions of mental competency and undue influence are so closely related and interwoven that we treat them together. *Parette* v. *Ivey, supra; Brown* v. *Emerson,* 205 Ark. 735, 170 S. W. 2d 1019; *Phillips* v. *Jones,* 179 Ark. 877, 18 S. W. 2d 352.

Numerous witnesses appeared for appellants and appellee at the trial of this cause. Lay witnesses, such as neighbors and acquaintances of the decedent, appeared on behalf of appellants. The testimony of these witnesses most favorable to the appellants can be summarized thusly: One witness testified that at times F. D. was all right but at times he had "spells" but she never witnessed these "spells", also, that in her opinion he was not capable of managing his own affairs; another witness testified that she didn't think F. D. was crazy but his mind wasn't right at times; another witness testified that in her opinion "he was very incompetent" and he needed Christian fellowship; another testified that when he saw F. D. in April, 1961, he was irrational in his actions and speech and that he was not as alert in September, 1961; another expressed the opinion that F. D.'s mind was bad; another, that he had bad eyesight but no other disabilities; another, he needed medical and spiritual attention and a better diet.

---

[1] A pending criminal charge based on a warrant issued because of alleged threats and show of violence to the wife of his nephew, Carl Appling, on September 14, 1960. Also, a pending petition, signed by Austin Sullivant and Mrs. J. W. Lybrand, brother and sister of J. D., to commit him to the State Hospital. This petition was filed on September 23, 1960.

Mrs. B. L. Ross, a tax consultant, testified on behalf of appellants that F. D. Sullivant visited her office on several occasions with reference to tax matters and he seemed confused in his thinking; that he expressed intense dislike for most of his relatives, especially Birt and his family. Mrs. Ross testified about and exhibited a signed document she said she formulated and typed up at F. D.'s request on April 19, 1960. This instrument is captioned ''Facts I Want To Make Known While My Sister, Jennie Appling, Is Alive And Before My Memory and Eyesight Get Any Worse.'' The document recites that he did not believe in wills and would never sign a will as long as he lived, had his right mind and knew what he was doing. Mrs. Ross testified that subsequently, on one of his last visits, she said to him, ''Mr. Bud, one time you said you hated Mr. Birt as bad as you hate Mr. Austin,'' and he said, ''Yes, but we patched up our business.''

Raybon Sullivant, a brother toward whom F. D. had no animosity, testified that he visited with F. D. six or seven times the last two years of his life and he saw him ten days before his death. He stated that the ill relationship between F. D. and Birt began to change for the better about April, 1960. He testified that since 1958 Bud's mind and body seemed to have deteriorated faster and that Bud couldn't remember things well; that he had a persecution complex and a confused mind. He testified that after their sister, Jennie Appling, died in June, 1960, Bud went all to pieces and ''lost his cradle of support.''

We now proceed to examine the testimony presented on behalf of appellee, Birt Sullivant, in proving the validity of the will. Appellants object to such testimony on the basis that these witnesses did not have adequate opportunity to observe the manner, habits and conduct of F. D. Sullivant. We find no merit in this contention.

There was medical testimony from several witnesses that F. D. was capable of transacting business. The most

persuasive medical evidence is that given by Dr. Arthur Fowler, Jr., who observed him almost twice daily as his patient when F. D. was in the Jefferson Memorial Hospital at Pine Bluff, Arkansas from September 27, 1960 until October 4, 1960. His complaint, at this time, referred to pain in his knees, his back, and a cough. Dr. Fowler gave as his opinion that F. D. Sullivant was in good general condition for a man of his age (77); that he was mentally alert and that in his opinion he was capable of transacting business. F. D. also told him he was going to make a will which he did a few days later on October 11, 1960.

There is testimony from bank officials with whom F. D. had business transactions that they considered him capable to transact his own business. Other witnesses testified in support of validity of the will but we do not deem it necessary to detail such.

No witness for contestants or contestee testified as to F. D. Sullivant's mental capacity on October 11, 1960, the date the will was executed, except Mr. Cole who drafted and witnessed the will and his legal secretary, Lois Green, who typed and witnessed the will. Both testified that F. D. Sullivant was mentally competent and gave definite instructions as to the contents of the desired will without prompting or participation by anyone. He asked if he had to leave the heirs not getting anything a dollar; he heard the will dictated; the will was read to him after it was typed; he paid $15.00 and asked for a receipt after the will was signed.

During the discussion about the desired contents of the will, F. D. related that he and his brother Austin had not visited with each other in twenty-five years; however, that it hadn't been that long since he and his sister, Mrs. J. W. (Della) Lybrand, had visited each other. Also, F. D. stated that they [Austin and Della] had "done so dirty", by trying to lock him up, and he appeared "as mad as a wet hen." This attitude seems to stem from the filing of a petition on September 23, 1960, signed by Austin Sullivant and Mrs. J. W. (Della) Lybrand, seeking to commit him to the State Hospital. This action

appears to have been prompted by F. D.'s alleged show of violence and threats toward the wife of a nephew, Carl Appling, when she went to visit him on September 14, 1960. A warrant was issued thereon. The fifth paragraph of his will reads as follows:

"FIFTH: By way of explanation, I am aware that I have other brothers and sisters but due to personal relationships and the absence of personal relationships over a period of the last several years, I am intentionally omitting leaving anything to them in this will."

The general consensus of all the testimony in this case is that F. D. Sullivant was characterized as a recluse and miser with many eccentricities and loved money, it seemed, to the exclusion of anything else.

In *Parette* v. *Ivey, supra,* we find the following cogent language which is most applicable to this case and we quote at length:

"* * * As was said by this court in *Puryear* v. *Puryear,* 192 Ark. 692, 94 S. W. 2d 695: 'It is elementary that, subject to statutory restrictions, every person of sound mind and disposing memory has the untrammeled right to dispose of his property by will as he pleases, however capricious and unjust such disposition may appear to be. Sound mind and disposing memory constitutes testamentary capacity which is said to be the ability of the testator to retain in memory without prompting the extent and condition of the property to be disposed of, to comprehend to whom he is giving it, and to realize the deserts and relations to him of those whom he excludes from the will. *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405. This definition presupposes a mental capacity sufficient to execute a will free from undue influence. *Tobin* v. *Jenkins,* 29 Ark. 151. With respect to the ability to know the extent and condition of the property to be disposed of and to whom it is being given, and to appreciate the deserts and relations to the testator of others against whom he discriminates or excludes from participation in his estate, it is unnecessary that he actually has this knowledge. It is sufficient if he has the mental capacity to understand the effect of his will as

executed. ''Capacity to understand the effect of making one's will, and not actual understanding, is the test of mental capacity required of the testator.'' *Huffaker* v. *Beers,* 95 Ark. 158, 128 S. W. 1040; *Emerich* v. *Arendt,* 179 Ark. 186, 14 S. W. 2d 547,' and in one of our early cases on the subject, *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 690, this court held: (Headnote 2) 'The infirmities of age and even a partial eclipse of the mind, will not prevent a person from making a valid testament if he can retain in his memory, without prompting, the extent and condition of his property, and understands to whom he is giving it and is capable of appreciating the relations to him and merits of others whom he excludes from any participation in his estate,' and on the question of undue influence, (Headnote 1) 'The undue influence which avoids a will is not the influence which springs from natural affection, or is acquired by kind offices, but it is such as results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. And it must be directly connected with the execution of the will and specially directed towards the object of procuring a will in favor of particular parties.'

See, also, *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405, wherein this court said: 'Testators are not required by law to mete out equal and exact justice to all expectant relations in the disposition of their estates by will, and the motives of partiality, affection, or resentment, by which they naturally may be influenced, are not subject to examination and review by the courts. *Barricklow* v. *Stewart,* 163 Ind. 438, 72 N. E. 128; *Clapp* v. *Fullerton,* 34 N. Y. 190, 90 Am. Dec. 681. If one has the capacity indicated to make a will then he may make it as ''eccentric, injudicious and unjust as caprice, frivolity or revenge can dictate.'' ' '' [Citations omitted]

From all of the testimony we are unable to say that the findings of mental competency and lack of undue influence, by the Probate Court, were against the preponderance of the evidence. The decree is therefore affirmed.

HARRIS, C. J., not participating.