SMITH v. BOSWELL.

Opinion delivered November 22, 1909.

1. WILLS—CONTESTS—BURDEN OF PROOF.—The burden of proving the insanity of a testatrix or her incompetency to make a will, or of proving that her will was procured by undue influence, is upon those who contest the will. (Page 74.)

2. SAME—TESTAMENTARY CAPACITY—OPINION.—Where a witness for the contestants in a will contest testified that the testatrix was physically

and mentally weak, nervous, hysterical and absent-minded, and that the principal legatee had a great influence over her, it was not error to refuse to permit such witness to be asked whether, in view of such condition and the influence of such legatee over her, the testatrix was capable of resisting a request or command of such legatee to convey to her a considerable portion of the estate of the testatrix. (Page 74.)

3. SAME.—UNDUE INFLUENCE.—The undue influence which avoids a will is not the influence which springs from natural affection, but such as results from fear, coercion or any other cause that deprives the testator of his free agency in the disposition of his property, and it must be specifically directed toward procuring a will in favor of particular parties. (Page 75.)

4. SAME—UNIMPEACHABLE WITNESS.—A witness to the handwriting of an alleged testatrix is "unimpeachable," within the meaning of Kirby's Digest, § 8012, when there is no evidence reflecting on the character or testimony of the witness so testifying. (Page 75.)

5. TRIAL—IMPROPER ARGUMENT—INVITED ERROR.—Appellants cannot complain of remarks of opposing counsel if they were elicited by improper remarks of appellants' counsel. (Page 76.)

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; affirmed.

*U. L. Meade,* for appellants.

1. The burden of proof was on appellee to establish the will by showing that it was in the proper handwriting of the testatrix. Kirby's Dig. § § 3107, 8012; 38 Ark. 482; 63 Ark. 145; 64 Ark. 349; 70 Ark. 88. While, as a rule, the burden is upon contestants, in a contest over an attested will, even in such cases there are exceptions to the rule. 19 Ark. 550; 25 Am. Dec. 282; 6 Lawson's Rights, Remedies & Practice, § § 3196, 3209; 1 Jarman on Wills, 69, 71; 46 Mo. 147.

2. The language used by appellee's attorney in his argument to the jury was prejudicial, and not to be justified on the ground that it was "in answer to Mr. Meade's remarks," for the latter was within the record in his remarks, and had said nothing relative to the matters referred to except that which had been testified to by witnesses. 82 Ark. 432.

3. It was error to permit the affidavit or proof of the will taken before the clerk in vacation to be read to the jury. The same witnesses whose affidavit was taken by the clerk were present and testified at the trial in circuit court. Being improperly admitted, its effect was prejudicial. 77 Ark. 431.

4. The court erred in excluding testimony offered by appellants to show the capacity or want of it of the testatrix to resist a request or overtures of appellee to convey to her, appellee, property by deed, will or otherwise. The witnesses offered severally qualified themselves to testify and to give their opinions by showing their opportunities for becoming acquainted with the mental and physical powers of both the testatrix and appellee and with the influence of the latter over the former. 22 Ark. 95; 15 Ark. 556; 76 Ark. 286; 64 Ark. 523.

5. The testimony of Robert L. Smith was improperly excluded. It was competent as tending to prove overtures, arguments and persuasions of appellee to her mother relative to the disposition of her property, and to bias her mind against her son. 87 Ark. 243; *Id.* 148; 29 Ark. 151. The court should have instructed the jury, as requested in appellant's 13th prayer, to the effect that if Mrs. Smith had sufficient mental capacity to make the will, but on account of her age, infirmities and bodily and mental weakness appellee had obtained an undue influence over her, and, prompted and controlled by such undue influence, she had executed the will, they should find against the will. 87 Ark. 243; 85 Ark. 363; 84 Ark. 490; 15 Ark. 556; 29 Ark. 151; 60 Ark. 301; 1 Jarman on Wills, 143.

6. If Mrs. Smith could, without inconvenience to herself, have called witnesses to attest her will, and did not do so, this was a circumstance which ought to have been submitted under proper instruction of the court to the jury for their consideration in determining whether or not she intended the instrument propounded as her last will and testament. Likewise, in determining the authenticity of the will, the jury should have been instructed to consider not only any circumstances tending to prove it, but also any circumstances, if shown, against its authenticity, and they should have been instructed further that nothing could dispense with the necessity of proof of her handwriting by the unimpeachable evidence of at least three unimpeachable witnesses. The court therefore erred in denying appellant's 17th and 18th prayers for instructions. 19 Ark. 546; 29 Ark. 151; 11 N. Y. 165.

7. A holographic will can be established only by the evidence of at least three disinterested and unimpeachable

witnesses that the body of the instrument, date and signature of the alleged testator thereto are in the genuine handwriting of the deceased; and in such case the law is not satisfied by a mere preponderance of evidence, but the jury must be satisfied by the unimpeachable evidence of at least three disinterested witnesses that the entire body of the instrument propounded, including the signature, is in the handwriting of the alleged testator. 85 Ark. 363; 80 Ark. 204; 86 Ark. 570; Kirby's Dig. § 8012, subdiv. 5; 50 Ark. 511.

*Dan B. Granger* and *Brooks, Hays & Martin,* for appellee.

1. Sec. 3107, Kirby's Dig., relied on by appellants as casting the burden upon appellee, applies only to controverted questions, not to *ex parte* proceedings. That section places the burden, in a controverted question, on the one who would fail if no evidence was adduced on either side. Unless supported by evidence, the charges of appellants would necessarily fall to the ground. Section 8012, relied on by appellants, casts no burden of proof anywhere. It merely permits a holographic will to be established by the un-impeachable evidence of three disinterested witnesses, etc. "Un-impeachable" does not mean "incontrovertible," as used in this section, but that the evidence must be that of persons who are not subject to impeachment for the reasons pointed out by our statutes. The burden was upon the contestants who tendered the issues. 13 Ark. 479; 19 Ark. 533; 29 Ark. 151; 96 Am. Dec. 697; 31 Am. St. Rep. 681, footnote. See also 1 Rice, Civ. Ev. 106, § 62; *Id.* 110, § 67; 88 N. Y. 357; 1 Rice, Civ. Ev. 139; 47 Ohio St. 423; 17 L. R. A. 494; 49 Ark. 367; 15 Ohio St. 1; 31 Mo. 40; 31 Ark. 175; Kirby's Dig. § 8042.

On the question of undue influence the burden of proof was on appellants. 13 Ark. 479; Garner on Wills, § 61; 72 S. W. 1065; 63 S. W. 617; 70 S. W. 136; 52 S. W. 98. So also as to the issue of mental incapacity. 69 Ark. 245; 87 Ark. 243.

2. Opinions of non-expert witnesses are competent where the object is to prove capacity or incapacity to make a contract, provided the facts and circumstances are first disclosed on which such opinions are founded. Opinions of witnesses offered by appellants were properly excluded because they were based, not on disclosures of facts, but upon an *assumed knowledge* of the men-

tal and physical condition of Mrs. Smith, and of the mental capacity of appellee and her influence over her mother.

3. Argument of appellee's attorney, objected to by appellants, if it was improper, was invited by the argument of appellant's attorney, in which he went out of the record in the patent effort to create the impression with the jury that he was a silent witness to Mrs. Smith's mental incapacity to make this will. Being invited, it is not reversible if erroneous. 77 Ark. 1 ; 75 Ark. 350; 74 Ark. 489.

4. There is no proof of any sort of undue influence exercised by appellee toward her mother. Nothing is shown but that natural love and affection between daughter and mother which the law recognizes as legitimate and approves. 49 Ark. 367; 87 Ark. 243. Neither does the proof sustain the charge of mental incapacity. "Old age, physical infirmities, and even partial eclipse of the mind would not prevent her from making a valid testament if she knew and understood what she was doing." 49 Ark. 367.

5. There was no error in permitting the proof of the will to be read by the jury. Will and proof of it thereto attached were submitted to the jury for their examination. Even if improperly admitted, it was not prejudicial, since the fact it tended to prove was otherwise amply established by the evidence. 74 Ark. 417; 58 Ark. 125 ; *Id.* 374; *Id.* 446; 7 Ark. 542; 9 Ark. 545.

BATTLE, J. On the 27th day of February, 1907, there was filed before the clerk of the probate court of Pope County the following paper writing:

"February the 18th, 1907.

"My last will and testament.

"I will to my daughter Mattie Boswell all my household goods and kitchen furniture.

"I will to my son Bob one dollar.

"I will to my sister Lou Zachary two hundred dollars ($200.00). I also will to Victory Roe one dollar.

"I will to Charlie Jones one dollar, Grace Jones one dollar, Florence Barton one dollar, Mack Jones one dollar, and Travis Jones one dollar. And all my real estate is deeded to Mattie Boswell, and I want a nice monument put to my grave when I am

gone to rest. And I will all my money and notes, have I any left, to my daughter Mattie Boswell.

"Cyrena Smith."

Annexed to it was the following affidavit and certificate:

"PROOF OF WILL."

"State of Arkansas,
County of Pope.

"Personally appeared before me, A. D. Shinn, clerk of the county and probate courts of Pope County, Arkansas, Edgar Shinn, Alva A. Tucker and R. L. Harkey, three disinterested citizens of the State of Arkansas, to me well known, who, being duly sworn, say that they are acquainted with the handwriting and signature of Cyrena Smith, deceased, have examined this writing purporting to be the last will and testament of said Cyrena Smith, deceased, and that said instrument is in her genuine handwriting, and her signature thereto is her genuine signature.

(Signed)                          "Edgar Shinn,
                                  "Alva A. Tucker,
                                  "R. L. Harkey.

"Subscribed and sworn to before me this 27th day of February, 1907.

"A. D. Shinn, Probate Clerk."

"State of Arkansas,
County of Pope.

"I, A. D. Shinn, clerk of the county court and ex-officio clerk of the probate court within and for the aforesaid county and State, do hereby certify that the above and foregoing last will and testament was admitted to probate before me in vacation as and for the last will and testament of Cyrena Smith, deceased.

"Witness my hand and official seal as such clerk, this 27th day of February, 1907.

(Seal)                          "A. D. Shinn, Clerk."

On the 6th day of May, 1907, Robert L. Smith and others filed in the Pope Probate Court what they called a response, as follows:

"In the Probate Court, Pope County, Ark.

"Robert L. Smith, Victoria Rowe, Charlie Jones, Florence Barton and Mack Jones, Jr., and Grace Jones, Travis Jones,

minors, by their father and next friend, J. M. Jones, Contestants.

"v.

"Mrs. Mattie Boswell and (R. N.) Boswell, Contestees.

### "RESPONSE OF CONTESTANTS.

"Comes the above-named contestants, and state that they have an interest in the estate of Cyrena Smith, deceased, and that Robert L. Smith is the son of said deceased, and that Victoria Rowe is the only heir and next of kin to Hazie Brown, now deceased, who was one of the children and heirs of the said Cyrena Smith, and that Charlie Jones, Florence Barton, Mack Jones, Jr., and Grace Jones and Travis Jones are the only children of Maggie M. Jones, now deceased, and that Maggie M. Jones was one of the children and heirs of the said Cyrena Smith, deceased. And for the grounds of contest to the pretended will filed in this court on the..........day...............1907, and probated by the clerk of this court in vacation, on the........day of........... 1907, would respectfully state:

"1st. That said pretended will is not in the proper handwriting of Cyrena Smith, nor neither the body of the instrument nor the signature thereto, and is therefore not the last will and testament of the said Cyrena Smith.

"2d. That, if said proposed will and signature thereto was written by the said Cyrena Smith, she was induced to do so by the undue and improper influence of Mrs. Mattie Boswell and her husband, Van Boswell, and others, to that extent as to render said proposed will void.

"3d. That, if said proposed will was written and executed by the said Cyrena Smith, it was done when she did not possess sufficient reason and mental capacity to dispose of her estate by will or otherwise, and hence said will is void.

"4th. That at the time said will was written, if written at all by the said Cyrena Smith, she did not possess sufficient mind and reason and mental capacity to understand and comprehend the extent and magnitude of her estate, and the just and equitable distribution of said bounty between her children, and the children of her deceased daughters, to that extent as to render a testamentary document void.

"5th. Wherefore, premises seen, contestants pray this honorable court for an order revoking the action of the clerk of this court, in vacation, admitting said instrument of writing to probate as of and for the last will and testament of said Cyrena Smith, deceased.

"And for the further order refusing to allow said instrument to be probated as the last will and testament of the said Cyrena Smith, and for all their cost.

"U. L. Meade and Jeff Davis,

"Attorneys for Contestants."

The contestees filed a reply, denying all the allegations in the so-called response.

The probate court, sitting as a jury, heard all the testimony adduced by the parties, and found that the document purporting to be the last will and testament of Cyrena Smith, and probated in common form before the clerk of the probate court on the 27th day of February, 1907, is such last will and testament, in her handwriting, both body and signature; and that at the time of writing it she was of sound mind and disposing memory, capable of executing it, and did execute it without the undue influence of any one; and approved and confirmed the action of the clerk in admitting it to probate.

Contestants appealed to the Pope Circuit Court. Upon their motion the name of R. N. Boswell was stricken from their pleading as a contestee. A jury was impaneled to try the issues, and the court decided that the burden of proof "in the whole case" rested upon the contestants. After hearing all the evidence adduced by all the parties the jury were required to answer the following interrogatories propounded to them:

"1. Is the entire will in controversy and its signature in the proper handwriting of Cyrena Smith, deceased?

"2. Did she possess sufficient mental and physical capacity to make a will?

"3. Was the will executed under undue influence as defined by the court in the instructions given?"

The jury answered the first two interrogatories in the affirmative and the last in the negative; and returned a verdict in favor of the contestee and the will. Judgment was rendered accordingly, and contestants appealed.

The first error complained of is the ruling of the court as to the burden of proof. As to the insanity of the testatrix and her incompetency to make a will, the ruling of the court is correct. The burden of proof was upon the contestants. *McCulloch* v. *Campbell,* 49 Ark. 367; *McDaniel* v. *Crosby,* 19 Ark. 533; *Bims* v. *Collier,* 69 Ark. 245; *Taylor* v. *McClintock,* 87 Ark. 243. The ruling was also correct as to undue influence. The burden was upon the contestants to prove that the will was procured by undue influence. *Guthrie* v. *Price,* 23 Ark. 396; *Jenkins* v. *Tobin,* 31 Ark. 306, 309; Page on Wills, § 405; Gardner on Wills, page 179, § 61; 3 Elliott on Evidence, § 2693. As to the execution of the will, both parties adduced voluminous evidence, and the appellants were not prejudiced by the ruling of the court, if it be assumed that it was incorrect, but on the contrary was benefited by having the opening and closing of the argument before the jury.

Minnie Brown testified in the trial that the mental and physical condition of Cyrena Smith, the testatrix, during the years she "stayed" with R. L. Smith, her son, was weak; complained of her heart all the time; was nervous, easy to cry, hysterical, have seen her sit on the floor and cry; absent-minded; would forget the day of the week; have seen Mrs. Boswell, the contestee, in company with her; she had a great deal of influence over Mrs. Smith, her mother; her mother did everything Mrs. Boswell wanted her to do, except she went to St. Louis to visit an invalid grandson when Mrs. Boswell did not want her to go; her great desire was to please Mrs. Boswell. After making this statement, the appellants then asked her: "Knowing as you did the mental and physical condition of Mrs. Smith at the time she lived with Bob Smith, and just prior to her death, and her mental capacity and the mental capacity of Mrs. Mattie Boswell, and the influence she had over Mrs. Smith, I will ask you if, in your judgment, was or was not Mrs. Smith mentally and physically able and capable of resisting or refusing a request or command of Mrs. Boswell to convey to her her estate or a considerable portion thereof?" Upon objection of appellee the court refused to permit witness to answer the question. It (court) did not err in so doing. "Proof of relations of friendship and affection between the testator and devisee and of kindly offices and proper con-

duct on the part of the latter does not establish undue influence, as it is natural for a person whose will is not improperly controlled to favor his best friends. The influence of the husband over the wife, that of the wife over the husband, of the parents over the children, and of the children over the parents, are legitimate, so long as they do not extend to positive dictation and control over the mind of the testator." 3 Elliott on Evidence, § 2696, and cases cited.

In *McCulloch* v. *Campbell*, 49 Ark. 367, this court said: "As we understand the rule, the fraud and undue influence which is required to avoid a will must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property, and the influence must be specifically directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiary in the ordinary affairs of life or that he was surrounded by them in confidential relation with them at the time of its execution." See *Sanger* v. *McDonald*, 87 Ark. 148.

The question was improper. The witness did not testify to any facts that tended to prove that Mrs. Boswell could control her mother in any manner, except by affection, or in any manner which was not perfectly legitimate.

Similar questions were asked other witnesses, which the court would not permit them to answer. For the reason given above the court did not err in so doing.

In seven requests appellants, in effect, in various ways asked the court to instruct the jury that they must not find the instrument of writing in contest to be the last will and testament of Cyrena Smith unless it be "established by the unimpeachable evidence of at least three disinterested witnesses that the entire body of said instrument, including the signature thereto, is in the handwriting of the said Cyrena Smith." The court properly refused to grant them. It is true that a statute provides, "when the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three

disinterested witnesses to the handwriting and signature of the testator or testatrix, notwithstanding there may be no attesting witness to such will." Kirby's Digest, § 8012, sub. 5. But this court held in *Arendt* v. *Arendt,* 80 Ark. 204, that the evidence is unimpeachable, within the meaning of the statute, when there is no evidence reflecting on the character or testimony of the witness so testifying. This ruling controls in this case.

The instructions given by the court as to the execution of the will and to mental capacity and undue influence were full, complete, and, construed together, substantially correct, and fairly submitted to the jury the issues in that respect.

Appellants complain of language used by an attorney of appellee while addressing the jury. It was as follows: "Now, this will was made in May, 1906. Mr. Meade, one of the counsel for the opposing side of this case, was the very lawyer that drew that instrument. Why don't he come here and testify as to the mental condition of Cyrena Smith? Why don't he testify to the condition of her mind? He can tell you about it, and he can testify."

This was said by Mr. Brooks, an attorney of appellee, in replying to the argument of Mr. Meade, who had just preceded him in arguing the case to the jury, and who said: "There is more of U. L. Meade in this case than anything else. I know more about these transactions and more about the condition of Cyrena Smith than any other living being. She called on me to write her first will in 1899, and I went and wrote it for her. In that will she failed to give the little children of Mack Jones anything. Again, in the spring of 1906 she sent for me to write her second will, and I prepared it and had her execute it, and in that will she failed to give the little children of J. M. Jones anything. But it is not proper for me to testify about these things."

Appellants objected to the remark of appellee's attorney, and the court excluded them from the jury. These remarks were elicited by the improper remarks of the attorney of appellants, and they therefore had no right to complain. *Pratt* v. *State,* 75 Ark. 350; *Choctaw, Oklahoma & Gulf Railway Co.* v. *Doughty,* 77 Ark. 1.

The evidence was sufficient to sustain the verdict of the jury. Judgment affirmed.