McWILLIAMS *v.* NEILL.

4-6440                                      155 S. W. 2d 344

Opinion delivered November 3, 1941.

*Sam M. Levine,* for appellant.
*Danaher & Danaher,* for appellee.

MEHAFFY, J. Mrs. Addie Parker, on July 23, 1938, made a will in which she gave to appellee, Annie Laurie Neill, the bulk of her property. Mrs. Parker died on May 2, 1940, nearly two years after the will was executed. The will was admitted to probate and record on May 13, 1940.

The appellants filed exceptions to and protest against the will on May 25, 1940. The contestants stated in their protest that the will was not executed by Mrs. Parker; that it was not witnessed in conformity with the statutes of the state of Arkansas and the law relating to the execution and attestation of wills, and that if the will was signed by Mrs. Parker, she lacked the mental capacity to execute a valid will at the time when it is alleged she signed and executed it; that she was incompetent to transact any business of any nature requiring any judgment whatsoever; that Mrs. Neill, the appellee, procured the execution of said will and is apparently designated as the main beneficiary and legatee under the will; that for several months prior to the date on which the will was executed, the said Mrs. Neill exercised complete and undue influence over the testatrix and completely and fully controlled all of her finances and disbursed practically all of Mrs. Parker's money; and the execution of the will was the direct result of the exercise of undue and overpowering influence.

It, therefore, appears that the contestants allege that the will is invalid because, they say, Mrs. Parker was not competent to make the will and because of the undue influence of Mrs. Neill.

The chancellor, after hearing the evidence and argument of counsel, found all the issues of fact and law in favor of the appellee; admitted the will to probate and ordered that it be duly recorded as the last will and testament of Addie Parker, deceased. To the court's finding, the contestants duly excepted and prayed an appeal to the Supreme Court, which was granted. The case is now here on appeal.

A great many witnesses testified in the case; in fact twenty-nine witnesses testified for the proponents, and seventeen for the contestants. Mr. Cook, an attorney of Texarkana, Arkansas, wrote the will and testified in be-

half of the proponent. He said that Mrs. Parker gave him the list of relatives, and Mrs. Neill did not give him the names of any of the nephews and neices; Mrs. Parker wrote them out; that he did not pay any attention to Mrs. Parker's inability to walk without being supported; that coming into the building there are some 15 or 20 steps, and his office is on the third floor; he never talked to Mrs. Neill about the matter; he never advised Mrs. Neill that there was a will, and does not know whether she knew it or not; witness represented Mr. Claude Parker, Mrs. Neill's brother; knew the Parkers a long time and met Mrs. Parker in Mrs. Neill's home; had never handled any matter for the Parkers after the execution of the will; he never mentioned the will transaction to anybody except Mr. Danaher in his office on May 4th; Mrs. Parker did not act like she was mentally incapacitated; he read the will to her after it was written and read it to the witnesses; Mrs. Parker signed with a pen and the witnesses signed in her presence.

Mr. and Mrs. Butcher, who witnessed the will, testified in substance that they signed the will as witnesses; signed it in Judge Cook's office; Mrs. Neill did not go with them, and Mrs. Parker told them not to mention the matter to Mrs. Neill; Mr. Butcher said that Mrs. Parker was perfectly healthy as far as he knew; did not notice anything abnormal, or any disability.

Mr. E. A. Howell testified in substance that he was engaged in the automobile business at Pine Bluff for fourteen years and knew Mrs. Parker about that length of time; he sold her an automobile in 1928, in 1938, and another one in June, 1938; the last car was sold to her after her husband's death; she traded in an old Dodge; during the negotiations he saw her five or six times; had some trouble closing the deal; she was hard to trade with; thinks the condition of her mind was good; did not see any tendency to weak-mindedness; that she used good judgment and handled the transaction herself; rode with Mrs. Parker several times and did not notice anything wrong with her mind.

Edwin Wells had been engaged in the monument business for the last seven years, testified in substance

that he sold a stone to Mrs. Parker for her husband's grave; Mrs. Parker seemed to know what she wanted and signed the contract and paid for the stone; would say that she was about average for a woman of her age; there was nothing to indicate any weak mental condition.

Charles A. Gordon, cashier of Simmons National Bank, testified in substance that he came in contact with Mrs. Parker on the death of her husband; that she did business with the bank until some time last year; talked with her before guardianship papers were taken out; as far as he knew she signed her own checks and later they were countersigned by Mrs. Neill; Mrs. Parker was in bad health and he thought someone should help her; he thinks she was mentally capable of attending to business and thinks she understood the transactions.

Mr. A. C. Stewart, on behalf of the contestants, testified in substance that he had some difficulty with Mrs. Parker about some roses; she had approved his planting some roses on the boundary line, and after the bushes had grown and were blooming, witness noticed someone digging in the middle of the flowers; Mrs. Parker informed him that she did not want any roses on her fence and instructed the yard boy to cut them down; witness decided not to have anything further to do with her; never associated with her afterwards, but saw her quite often; regards her as weak-minded, commencing about four years ago; she was crippled and something seemed to be wrong with her right arm; looked like she was in a trance at times; thinks she knew what she was doing in 1937, but thinks it got worse; does not think her mind was right; in the last few months of her life she completely lost her mind.

Numerous witnesses testified that they knew Mrs. Parker intimately and that her mind was normal, nothing wrong with it. Several witnesses testified for the contestants substantially the same as Mr. Stewart.

It would serve no useful purpose to copy all of the evidence. The chancellor found that the evidence showed that Mrs. Parker was capable of making a will, and we think the great weight of testimony supports his finding on this issue.

There was practically no effort to prove any undue influence that would make the will void. The appellee, Mrs. Neill, was a sister of Mrs. Parker's husband, and from the evidence they were very intimate. A portion of the estate Mrs. Parker had was received from the railroad company for the death of Mr. Parker, brother of appellee, which occurred in February, 1938.

Appellant first calls attention to the case of *Tobin* v. *Jenkins,* 29 Ark. 151. The court, in that case, held that undue influence and incapacity must be considered together, and said: "There can be no doubt but that failure of a testator to make a fair distribution of his estate amongst his children, at once arouses inquiry as to the probable cause of so unnatural an act. That provision by way of advancements had been made to part of the children, or that some of them were prodigal, or disobedient, is at once looked into by the inquiring mind. Suspicion is aroused, and this unnatural devise is always a circumstance which should go to the jury; but we think that the term, strict proof of fairness, tended to induce the jury to attach unnecessary importance to this circumstance, which, though properly given as such, does not necessarily require for this cause strict proof, or stricter proof, than other circumstances."

In the instant case, Mrs. Parker had no children, and she was probably closer to the appellee, her husband's sister, than to any other person.

The Tobin case is discussed and distinguished in the case of *Mason* v. *Bowen,* 122 Ark. 407, 183 S. W. 973, Ann. Cas. 1917D, 713. The late Chief Justice Hart, in that case, quoted with approval the following rule:

"'As we understand the rule, the fraud or undue influence, which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties.'"

Appellants argue that the issue in this case lies in answer to the following query: "Could the testatrix retain in her memory without prompting, the extent and condition of her property, and comprehend to whom she was giving it, and be capable of appreciating the deserts and relations to her of others whom she excluded from participation in her estate?"

As we have already shown, the testatrix in this case had no children, and there is no evidence tending to show that she was influenced by anyone in the making of the will, but she gave the writer the facts herself, and the statements she made were without any prompting.

Appellants contend that it was evident from the opinion of the chancellor that much of the fallacy of his decision may be definitely traced to his acceptance of the cases of *Puryear* v. *Puryear,* 192 Ark. 692, 94 S. W. 2d 695, and *Pernot* v. *King,* 194 Ark. 896, 110 S. W. 2d 539, as controlling here. Appellants say that there was no serious contention and no proof of undue influence in those cases. We are of opinion that those cases are controlling.

In the Puryear case, *supra,* the court said, among other things: "Even if there was some testimony tending to show feebleness of intellect, it would not of itself be sufficient to establish lack of testamentary capacity unless it was so great as to render the testator incapable of appreciating the nature and consequences of his act. *Phillips* v. *Jones,* 179 Ark. 877, 18 S. W. 2d 352. Neither would physical suffering on the part of the testator be sufficient to render the will void unless it was so great as to make him incapable of properly disposing of his estate. *Griffin* v. *Union Trust Co.,* 166 Ark. 347, 266 S. W. 289."

In the case of *Pernot* v. *King, supra,* the court, quoting from *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405, said: "The law leaves everything to the unfettered discretion of a testator, on the assumption that, though in some instances caprice and passion, or the power of new ties, may lead to the neglect of claims that ought to be attended to . . . nothing short of mental unsoundness . . . will avoid a will. Moral, or what the books term 'medical,' insanity—a perversion of the sentiments and affections—manifested in jealousy, anger, hate, or

resentment, however violent and unnatural, will not defeat a will unless the emanation of a delusion.''

Attorney for contestants asked appellee the following questions and she gave these answers: ''Q. Didn't you furnish the affidavit upon which the guardianship was based? A. Mr. Evan Crawford furnished that; I just signed what he told me to sign. And later on you told me he was crazy; I guess he was. Q. I told you that? A. Yes, you did, in your office; now don't deny that. Q. Well, I am not testifying, Mrs. Neill.''

In the case of *Bollinger* v. *Ark. Valley Trust Co., Executor, ante* p. 525, 151 S. W. 2d 675, the questions of undue influence and mental capacity were discussed.

There is some conflict in authorities as to the burden of proof. Page on Wills, vol. 1, § 685.

This court said in the case of *Smith* v. *Boswell*, 93 Ark. 66, 124 S. W. 264: ''As to the insanity of the testatrix and her incompetency to make a will, the ruling of the court is correct. The burden of proof was upon the contestants. . . . The ruling was also correct as to undue influence. The burden was upon the contestants to prove that the will was procured by undue influence.''

The burden of proof, under the decisions of this court, is upon the contestants.

''In ordinary civil actions a fact in issue is sufficiently proved by a preponderance of evidence, and the verdict or finding should be based upon the preponderance of the evidence, whether the evidence is direct or circumstantial. Under this rule a party is not required to prove his case 'beyond a reasonable doubt,' 'beyond doubt,' 'beyond any doubt,' 'beyond dispute,' 'beyond question,' 'conclusively,' 'to a certainty,' or a 'moral,' 'reasonable,' or 'absolute' certainty, 'to the satisfaction of the jury,' or by evidence which is 'clear and conclusive,' 'clear and satisfactory,' 'clear and unequivocal,' 'positive and conclusive,' or such as to 'satisfy' the jury, or 'exclude the truth of any other theory.' It is not indispensable that his evidence should be even equal to the testimony of one unimpeached witness. All that is required of the party at the outset is to give competent evi-

dence sufficient, if undisputed, to establish the truth of his averments." 23 C. J., p. 12, *et seq.*

The rule in equity is the same as at law. The Mississippi Supreme Court said in discussing this rule of evidence: "Equity is not more stringent in requiring evidence than a court of law in similar cases. Whatever, therefore, would sustain a verdict in the latter ought to sustain a decree in like case, in the former." *Gray* v. *Roden, et ux,* 24 Miss. 667.

The rule as to the burden of proof is the same as to insanity and questions of capacity, as above stated; and the burden is on the contestants to show want of capacity or undue influence. Page on Wills, vol. 1, § 686.

It is our opinion that the contestants did not prove by a preponderance of the evidence either that Mrs. Parker was insane or that there was undue influence exercised in making the will.

The judgment is affirmed.