SHIPPEN *v.* SHIPPEN.

4-8453                                      211 S. W. 2d 433

Opinion delivered May 17, 1948.

Rehearing denied June 14, 1948.

*James E. Hyatt, Jr.,* and *A. F. Barham,* for appellant.

*Bruce Ivy* and *W. W. Prewitt,* for appellee.

ROBINS, J. Appellants instituted proceedings in the probate court to contest the will of their father, E. S. Shippen, who died January 29, 1944. The will was executed on May 23, 1936, and by its terms all the testator's children (except one child for whom a $100 bequest was made) received $5 each. The remainder of testator's property, valued at more than $100,000, was devised and bequeathed to testator's second wife, contestee Mattie Shippen.

Appellants asserted (and appellees denied) that the testator was mentally incapable of executing the will and further that when he signed it he was under the undue influence of said contestee.

The lower court found the issues in favor of appellees and from judgment upholding the will this appeal is prosecuted.

In 1916, E. S. Shippen, then a resident of Louisville, Kentucky, deserted his first wife (now deceased) who had borne him nine children, and came to Arkansas, where, in 1918, he secured a divorce from his wife, ap-

parently without her knowledge. In a short time he married appellee, Mattie Shippen, with whom he was said to have been infatuated for six years. Thereafter he lived with said appellee, in Mississippi county, Arkansas, until his death.

The testimony of appellants was to the effect that until Mr. Shippen met contestee, Mattie Shippen, he was a kind and loving husband to their mother and was affectionate toward his children. They described his unfortunate infatuation for said appellee and stated that because thereof he became rude and unkind to their mother before he finally left her. They insisted, however, that throughout his life he evinced a strong affection for them and showed such a feeling toward them as would cause them naturally not to expect disinheritance at his hands. Most of them testified to a belief that he was not mentally capable of executing a will. None of these appellants ever lived with the testator or was closely associated with him after he came to Arkansas in 1916. Some incidents, from which a conclusion might be drawn that he was subject to undue influence of appellee, Mattie Shippen, were related.

Appellants introduced the testimony of ten persons who had been associated, to a varying extent, with the testator. Some of these witnesses stated that he was a reckless driver. Others testified to occasional and unrelated peculiar actions of testator, which caused them to conclude that he was mentally unbalanced.

A summary of contestants' testimony was submitted to a psychiatrist, in the form of a hypothetical question, and in answer thereto he expressed the opinion that at the time the will was executed by him Mr. Shippen was of unsound mind and therefore incapable to make a will.

Twenty-two acquaintances and associates of the testator testified on behalf of contestees. The net effect of their testimony was that Mr. Shippen was an unusually successful business man, of strong determination and not susceptible of being controlled in his decisions by others. He was shown to be well informed and a leader in civic affairs. Their testimony showed that he

suffered financial reverses during and prior to 1934, when, by appellee Mattie Shippen pawning her jewelry, he borrowed enough money to enter the business from which, in ten years he acquired a considerable fortune.

The persons who witnessed the will testified that Mr. Shippen, unaccompanied by appellee, Mattie Shippen, or anyone else, brought the typewritten will, already prepared, to them to be witnessed.

Mr. Shippen, during the latter years of his life, suffered from a genito-urinary disorder, culminating in a malignant growth which caused his death. Two of the physicians who attended him at different times testified that up until a short time before his death he was of sound mind.

Appellees submitted to another psychiatrist the same hypothetical question as that propounded to the psychiatrist who testified for contestants, and elicited an answer from the witness that in his opinion the testator was of sound mind when he executed the will.

We have often defined mental capacity such as must be possessed by a testator in order for him to make a valid will. The rule has been generally expressed that sound mind and disposing memory, constituting testamentary capacity, is (a) the ability on the part of the testator to retain in memory without prompting the extent and condition of property to be disposed of; (b) to comprehend to whom he is giving it; and (c) to realize the deserts and relations to him of those whom he excludes from his will. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405; *Boone* v. *Boone,* 114 Ark. 69, 169 S. W. 779; *Mason* v. *Bowen,* 122 Ark. 407, 183 S. W. 973, Ann. Cas. 1917D, 713; *Griffin* v. *Union Trust Company,* 166 Ark. 347, 266 S. W. 289; *Puryear* v. *Puryear,* 192 Ark. 692, 94 S. W. 2d 695; *Petree* v. *Petree,* 211 Ark. 654, 201 S. W. 2d 1009. And the burden of proof, in cases of this kind, is on the contestant, who asserts the mental incapacity of the testator. *McWilliams* v. *Neill,* 202 Ark. 1087, 155 S. W. 2d 344; *Parette* v. *Ivey,* 209 Ark. 364, 190 S. W. 2d 441.

When these rules are applied to the testimony adduced in this case it must be held that appellants did not discharge successfully the burden imposed upon them. There was no testimony from which it may be concluded that Mr. Shippen did not, at the time of executing the will, remember the extent and condition of his property or that he did not know to whom it was being given by him. While it might seem that, in virtually disinheriting the children of his first wife, he was doing a cruel injustice to his own flesh and blood, it cannot be said that a preponderance of the evidence showed that he did not realize the deserts and relationship of these children. A man's mental capacity must be gauged by something more than his idiosyncrasies and peculiarities. His ability to meet and successfully contend with problems of life is a most important index to his mental calibre. The undisputed testimony shows that from 1934 to his death —and the will was executed during this period—Mr. Shippen amassed a comfortable fortune and became a leader in civic affairs in his community. Such results are not ordinarily achieved by persons of unsound mind.

Considering the question of undue influence such as invalidates a will, we said in the case of *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590: "The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property."

The testimony shows that Mr. Shippen had a deep and abiding love for appellee, Mattie Shippen, even though it may have been illicit in its inception. When he executed the will he had been living with her in wedlock for 18 years, and she had borne him a son who received the same legacy as did each of Shippen's children by his first wife. The proof showed that appellee had made him a dutiful and loving wife. His closest associates testified that Mr. Shippen was a man of independent thought and action. There was no proof whatever that appellees ever brought any influence to bear upon him to make any sort of disposition of his property. Apparently

his will was prepared in the office of one of the leading lawyers of the state. It is undisputed that Mr. Shippen selected the witnesses and had them attest his execution of the will, all in the absence of appellees. In view of this testimony it cannot be held that the will was executed through fear, coercion or any other malign influence which would stamp it as not the testator's own act.

The judgment of the probate court was correct and is affirmed.