WERBE *v.* HOLT.

4-9395

237 S. W. 2d 478

Opinion delivered February 26, 1951.

Rehearing denied April 2, 1951.

*J. R. Crocker, Thos. F. Butt* and *O. E. Williams,* for appellant.

*Sullins & Perkins, Price Dickson* and *Lee Seamster,* for appellee.

HOLT, J. This is the second appeal in this case. See *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d ·225, opinion delivered April 24, 1950, for opinion in first appeal wherein we reversed on a procedural matter.

A will contest is presented in which appellants seek to set aside, for lack of mental capacity and undue influence, a will probated as that of F. C. Werbe. Appellants are the alleged adopted son and the heirs-at-law of the deceased, Werbe. Under the terms of his will, Mr. Werbe left all his estate to Mrs. Jessie Holt, his housekeeper.

After a somewhat extended and patient hearing, the trial court found the will valid, that the petition of appellant, James Earl Werbe, and that of the other appellants, as interveners, should be denied. The court did not pass upon the legality of Earl Werbe's adoption or the claims of the remaining appellants that they were the heirs-at-law of the deceased. (See *Hawkins* v. *Hawkins, ante*, p. ......., 236 S. W. 2d 733, opinion handed down this day, wherein the status of an adopted child is considered.)

From the decree comes this appeal.

For reversal, appellants argue (1) "the court should have found whether Earl Werbe was legally adopted," and (2) "undue influence was used in procuring the execution of the alleged will."

(1) Since we have reached the conclusion that the decree should be affirmed, it becomes unnecessary to consider appellants' first contention that Earl Werbe was the legally adopted son of the deceased, and the remaining appellants his heirs-at-law.

(2) No principle of law appears to be more definitely settled than that the burden of showing lack of mental capacity and undue influence in making a will rests on the contestant. As early as 1858, when the decision in *McDaniel ad.* v. *Crosby, et al*, 19 Ark. 533, was announced and through a long line of subsequent cases, we have adhered to the above rule. A few of such cases

are: *Jenkins, et al* v. *Tobin, et al,* 31 Ark. 306; *McCulloch* v. *Campbell,* 49 Ark. 367, 5 S. W. 590; *Taylor* v. *McClintock,* 87 Ark. 243, 112 S. W. 405; *Smith* v. *Boswell,* 93 Ark. 66, 124 S. W. 264; *Emerich* v. *Arendt,* 179 Ark. 186, 14 S. W. 2d 547; *McWilliams* v. *Neill,* 202 Ark. 1087, 155 S. W. 2d 344; *Shippen* v. *Shippen,* 213 Ark. 517, 211 S. W. 2d 433; *Blake* v. *Simpson, Administrator,* 214 Ark. 263, 215 S. W. 2d 287; *Walsh* v. *Fairhead, Executrix,* 215 Ark. 218, 219 S. W. 2d 941; *Simpson* v. *Burge,* 216 Ark. 132, 204 S. W. 2d 830.

In *Shippen* v. *Shippen, supra,* we said: ''We have often defined mental capacity such as must be possessed by a testator in order for him to make a valid will. The rule has been generally expressed that sound mind and disposing memory, constituting testamentary capacity, is, (a) the ability on the part of the testator to retain in memory without prompting the extent and condition of property to be disposed of; (b) to comprehend to whom he is giving it; and (c) to realize the deserts and relations to him of those whom he excludes from his will. (Citing a number of cases.) And the burden of proof, in cases of this kind, is on the contestant, who asserts the mental incapacity of the testator.''

The rule as to undue influence which appears to have been followed in all subsequent opinions on the subject, was announced by this court in *McCulloch* v. *Campbell, supra,* in this language: ''As we understand the rule, the fraud or undue influence, which is required to avoid a will, must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property.''

''The testator may take into account, when considering his duties to relatives, past neglect, indifference, estrangement, and the like.'' *Parette* v. *Ivey, Executor,* 209 Ark. 364, 190 S. W. 2d 441.

F. C. Werbe died October 21, 1948. His wife had died in 1944 after a long illness. They had no children

of their own. Werbe executed his last will July 13, 1948, by which he gave all of his estate to appellee, Jessie Holt, his housekeeper, who had lived in his home since 1934.

A large number of witnesses were presented by the litigants and much of the evidence is in irreconcilable conflict. We do not attempt to set it out in detail since to do so would unduly extend this opinion.

Appellant, Earl Werbe, now 38 years of age, married and a resident of Indiana, was taken into the home of his foster parents in Indiana when he was about eight years of age. Mr. and Mrs. Werbe moved to Fayetteville in 1927 and the deceased became a professor in the University of Arkansas. Earl was about seventeen years old at the time, but did not go with them to Arkansas or live with them thereafter. He visited them at Fayetteville five or six times, the first visit was some time in 1934 and at that time Mrs. Holt was their housekeeper. He made his last visit in 1938 or 1939. He did not go to Fayetteville when his foster mother died. He testified that the deceased had expressed the intention of giving him his property at his death. A will to this effect was made some time prior to the will in question here, as was also a deed, which deed, however, was recalled before the execution of the present will. There was other evidence that deceased had made statements that he had intended for Earl to have his property.

Appellee, Jessie Holt, testified that she came to the home of deceased and his wife in 1934 and remained as housekeeper for about fifteen years. Until Mrs. Werbe's death, she worked for her board and keep. She nursed his wife who had suffered with goiter and a mental illness for a long period prior to her death in 1944. Thereafter, she continued as housekeeper, performing all the necessary duties in the home until Mr. Werbe died in October, 1948, on the promise and understanding that she was to have $40 a month, and his property at his death. Mr. Werbe, as indicated, made her his sole beneficiary in his will in accordance with his promise, but was unable to pay her $40 per month. On the same day, July 13, 1948, when the will in question was executed

decedent also made a deed to appellee, Mrs. Holt, to his property. She testified, in effect, that she attempted no undue influence over him and that he possessed mental capacity. She was not present when he made his will.

Two prominent attorneys witnessed the will in question, one of these attorneys prepared it, both witnessed it, and both testified that the deceased knew what he was doing, and possessed mental capacity at the time he executed the will.

Dr. Miller, a reputable and prominent physician, who had attended the deceased, as his family doctor from about 1940 through his last illness, testified that Mr. Werbe possessed testamentary capacity, when the present will was made.

Another physician, whose qualifications are unquestioned, testified that he had attended deceased over a period of the last two years of his life, his last visit being on July 26, 1948. "Q. From your examination, from the visits there with him, and the conversations with him and from your observations, state what, in your opinion, was his mental condition at that time? A. I believed his mental condition was normal. . . . Q. What was his mental condition on the 13th day of July, 1948? A. I will have to base my answer on my observations of his condition before and after that date. I didn't see him then, but my opinion based on that (is that) as being mentally normal. A. I found Mr. Werbe, from his observations to me, in my opinion, to be rather quick and clear, mentally. A. His (F. C. Werbe's) temperament, based on my few visits, did indicate and my impression was that he was something of a cross, cantankerous old man."

A nurse, who attended the deceased twice a week under Dr. Miller's instructions, testified that she gave Mr. Werbe injections twice a week under Dr. Miller's orders, the last time about three or four hours before his death. "Q. From your conversations with him and your observations of him and your experience in seeing sick people, what in your opinion was his mental condi-

tion during the time you visited him in '48? A. Perfectly all right.'' She further testified that she observed Mrs. Holt during her visits and that Mrs. Holt was caring for the deceased. The nurse further testified that the injections which she gave deceased would not make him groggy or produce coma.

A former student at the University testified that about six months or a year before Mr. Werbe died, Mr. Werbe told witness: ''A. When I die, the housekeeper will get the place, she has earned it.''

A number of other witnesses testified that deceased, shortly before his death, had said that he was going to give his property to appellee.

The cause comes to us for trial *de novo*.

As indicated, on the fact question whether deceased had been unduly influenced or lacked mental capacity when he executed the will in question here, the trial court on conflicting testimony found against appellants, contestants of the will, and after a review and consideration of all the testimony presented, we are unable to say that the court's findings were against the preponderance of the evidence.

Accordingly, in keeping with our long established rule, the decree must be, and is affirmed.