MEEK *v.* BLEDSOE.

4-9945                                        253 S. W. 2d 369

Opinion delivered December 22, 1952.

*Harper, Harper & Young,* for appellant.

*Hardin, Barton & Hardin,* for appellee.

ED. F. McFADDIN, Justice. This appeal challenges a Probate Court judgment which admitted a will to probate.

Mrs. Mary N. Old, died on June 17, 1951, at the age of 78. A few days later, her will, dated *July 21, 1945,* was admitted to probate, and in the will the appellant, Meek, was beneficiary and executor. But in August, 1951, a subsequent will, dated *December 4, 1949,* was offered for probate; and the appellees are the beneficiaries under the 1949 will. On January 22, 1952, after a hearing of which all interested parties were notified, the Probate Court entered judgment admitting the *1949 will* to probate, and revoking the probate of the *1945 will;* and this appeal ensued.

The mental capacity of the testatrix is not questioned. The 1949 will was drawn by Mr. Geiger and witnessed in his office by Mr. Williams and Mrs. Rodenhiser. Each of the said witnesses testified clearly and positively that they were present with Mrs. Old, and at her request, in Mr. Geiger's office in 1949; that at said meeting Mr. Geiger stated that Mrs. Old wanted witnesses to her will; that Mrs. Old first signed the will; that Mr. Williams and Mrs. Rodenhiser then signed as witnesses;[1] and that Mrs. Old remained in Mr. Geiger's

---

[1] The clause after Mrs. Old's signature and immediately above the signatures of the attesting witnesses reads as follows:

"And, WE, the undersigned, Harry W. Williams and Mamie Rodenheiser, residents of Huntington, Sebastian County, Arkansas, having been requested by Mrs. Mary N. Old, the maker and signer of the within and foregoing Last Will and Testament, to serve as her witnesses to such act, do hereby declare that we, each and both of us, in her presence and in the presence of each other, did see and observe that

office after the witnesses left. Thus it is clear that the 1949 will was duly signed by the testatrix and the witnesses as required by law. (See § 19 of Act 140 of 1949, as now found in § 60-403 of the 1951 Pocket Supplement of Ark. Stats.).

But the appellant claims tnat Mr. Geiger, the scrivener, did not read the will to Mrs. Old before she signed it, and that Mrs. Old herself did not read the will before she signed it; and appellant relies on the following statements as the applicable law:

". . . it is essential to the validity of a will that the testator know and understand the contents thereof. In general such knowledge must be possessed at the time the will is executed." 57 Am. Jur. 50.

Also from 68 C. J. 606:

"It is indispensable to the validity of a will that the testator should know its contents at the time of its execution, knowledge after the execution being insufficient. However, as elsewhere shown, knowledge will ordinarily be presumed from the execution of the instrument, although the presumption is only a *prima facie* one and may be rebutted. If it appears affirmatively that he did not read the will and that it was not read to him, it must be shown that the contents were in some way known to him."

Mr. Geiger testified as to Mrs. Old's frequent visits to him, her request that he prepare the will, her detailed instructions as to the matters to be placed in the will, his preparation of the will, the signing by Mrs. Old[2] and the witnesses, and Mrs. Old's lengthy visit and favorable

she did make and sign such instrument in our presence, without any influence or persuasion from any person or persons whomsoever, she declaring it to be an entirely free and voluntary act of her own."

[2] The paragraph in the will immediately preceding Mrs. Old's signature reads:

"IN TESTIMONY WHEREOF, I have this December 4, 1949, set my hand and seal to this my Last Will and Testament, having requested that Harry W. Williams and Mamie Rodenheiser, both residents of Huntington, Arkansas, serve as such witnesses to my signing and sealing, which request they have herein done in my presence and in the presence of each other."

comments on the will while she was still in his office. On this latter point he testified:

". . . She spent an hour and a half or two hours with it after it was over before she went away; and after she'd instructed me what to do with it, she spent at least an hour with it in her hands and possession.

. . .

"Q. Well, were the contents of this will what she told you to put in it?

"A. Absolutely. The things that were specified here are exactly the way she said to do it, in every little old small detail.

"Q. And after she read it, did she approve it?

"A. She said, 'That's what I'd like to have happen.' 'Now, then,' she said, 'I'll get this thing like I want it.' That was her final summation."

On cross-examination, Mr. Geiger frankly stated:

"Q. In other words, she executed it before she read it?

"A. I wouldn't say that. I'll swear,—I'd have to take that position.

"Q. Your best recollection is that she did not read it before she signed it?

"A. If she did, she didn't read it then, but she spent—I'm not going to say that—I'm not going to make that remark.

"Q. You can't say whether she read it or not?

"A. No, sir, I can't."

The last quoted testimony is the main basis for the appellant's contention. We point out, however, that Mr. Geiger testified that he could not *definitely* say whether Mrs. Old read the will before she executed it: he did *not* definitely testify that she did *not* read the will or know its contents. Thus the Trial Court could well have found

that the presumption referred to in the quotation from 68 C. J. 606, *supra,* had not been rebutted by the appellant in this case.

The precise question here before us—as to the necessity of showing a reading of the will before signing—has not been decided by this Court, but other Courts have spoken on the matter. A leading case is that of *Hess' Appeal,* 43 Pa. St. 73, 82 Am. Dec. 551, decided by the Supreme Court of Pennsylvania in 1862, and with facts strikingly similar to those here. There, the testator, trusting the scrivener, executed the will without having read it, and the scrivener testified that he wrote the will exactly as the testator directed. The Supreme Court of Pennsylvania admitted the will to the record, saying:

"But when the very witness who proves the omission proves also the authenticity of the writing, as the very will of the testator, ascertained and written from his own dictation freely made, then what have we to doubt about? When the testator trusts his scrivener, why should we distrust him, when there is no word or act that impeaches his honesty?"

Another well considered opinion on the same point is that of *In Re: Bose's Estate,* 136 Neb. 156, 285 N. W. 319, decided by the Supreme Court of Nebraska in 1939. The pertinent language in that opinion reads:

"It is sufficient if the court is satisfied by competent evidence that the contents of the will were known to and approved by him. Where a will, written in the presence of the testator according to his dictation, is executed according to the statute, it is valid though not read to or by him. Hess Appeal, 43 Pa. 73, 82 Am. Dec. 551.

"The doctrine as stated by the English cases on this point is illuminating, viz.: 'If a person has given instructions to a solicitor to make a will, and the solicitor prepares it in accordance with those instructions, all that is necessary to make a good will, if executed by the testator, is that he should be able to think thus far, "I gave my solicitor instructions to prepare a will making a certain

disposition of my property. I have no doubt that he has given effect to my intention, and I accept the document which is put before me as carrying it out.' '' *Parker* v. *Felgate,* Eng., 1882-1883, 8 Prob. Div. L. R. 171. This doctrine was expressly approved in *Perera* v. *Perera,* Eng. (1901) App. Cas. 354.''

In *Leister* v. *Chitwood,* 216 Ark. 418, 225 S. W. 2d 936, we said:

'' 'Publication under the statute is necessary to give effect to a will; but it means that the testator, having capacity to make a will, shall understand that the instrument which he is about to execute, is a testamentary disposition of his property, and that he shall, at the time, communicate to the witnesses, that he does so understand it.' '' (quoting from *Rogers* v. *Diamond,* 13 Ark. 474.) The evidence in the case at bar shows full compliance with the above quoted requirement. Mrs. Old was thoroughly satisfied with the provisions of her will, as evidenced by her subsequent conduct. From a study of the entire record and from an examination of the original will, we conclude that the judgment of the Probate Court, here challenged, was in all things correct.

Affirmed.