TATUM *v.* CHANDLER.

5-1716                                                   319 S. W. 2d 513

Opinion delivered December 22, 1958.

[Rehearing denied February 2, 1959]

*Joe Purcell,* for appellant.

*John L. Hughes & Fred E. Briner,* for appellee.

PAUL WARD, Associate Justice. This litigation relates to the probation of a will made by W. M. Tatum March 31, 1954. Mr. Tatum, a widower at the time, died on February 24, 1957 at the age of 86, leaving three sons and one daughter. Appellee, May Belle Chandler, is the daughter and two of the sons are J. W. and James L. Tatum, the appellants. The other son is Auda L. Tatum.

The trial court admitted the will to probate, and appellants here seek a reversal on three grounds, to-wit: *One,* the will was not executed according to law; *Two,* the testator lacked mental capacity, and; *Three,* undue influence on the part of appellee.

The testator left an estate estimated at approximately $40,000 principally in real estate. By the terms of his will J. W. received 6 acres of land out of a certain forty on which the home of the deceased was situated; Appellee received the balance of that forty; J. W. and appellee together received an additional 90 acres; James L. received three acres with certain restrictions valued at about $800 and; Auda L. received one dollar.

From the record it appears that J. W. and his family lived with his father on the home for many years and that, until recent years, they farmed together; Appellee lived in Missouri but visited her father on numerous occasions; She made several gifts to her father totaling, according to her statements, about $2,000; At one time the son Auda, who lives in California, was given 40 acres of land by his father, and at another time he

was given a place to build a house; J. W. and James L. had also received gifts from their father.

*One.* Appellant's contention that the will was not legally executed is based on the testimony of the two attesting witnesses. They both admitted they saw W. M. Tatum sign his name at the bottom of the paper or will, and also admitted they signed their names at the bottom of the attesting clause in the testator's presence and in the presence of each other. Both witnesses however, said the will was not read in their presence and that the testator did not state the paper was his will or request them to sign as witnesses. In support of their contention appellants cite *Orr* v. *Love,* 225 Ark. 505, 283 S. W. 2d 667.

We are unable to agree with appellants. The will and the attesting clause admittedly appear to be regular in every respect. The attesting clause which the two witnesses admit signing states that they signed at Tatum's request and that he declared in their presence the instrument was his last will and testament. The *Orr* case just cited merely holds that it is indispensable that the testator should know the contents of the will at the time of its execution, and that no presumption of due execution of a will arises from the mere production of an instrument purporting to be a last will.

In this case there is much more than the mere production of an instrument. The undisputed testimony of appellee was that Tatum had talked to her previously about making a will; that he, on this occasion, not only requested a will be made but dictated to her, while she made notes, just what he wanted in it; that he gave her land descriptions which she had never known; that she had an attorney to write the will as directed, and; that she personally invited the attesting witnesses to be present and informed them fully of the purpose. Before the

two witnesses attested the will they visited a few minutes with J. W. Tatum and his wife in a room near where the will was executed, and J. W. knew at that time the will was to be executed. All these circumstances and others which could be cited from the record leave little doubt that all parties knew exactly what was going on at the time the will was executed. The Probate Judge's finding that the will was properly executed is supported by the weight of the evidence. This court has held that such circumstances may be considered in this kind of a case. In *Leister* v. *Chitwood,* 216 Ark. 418, 225 S. W. 2d 936, we approved this statement.

"Each of the attesting witnesses must sign his name as a witness at the request of the testator, but such request might be inferred from the attendant circumstances in proof by signs or gestures as well as words . . . by the testator desiring the witnesses to be sent for to attest the execution of his will, or from a request made to such witnesses by another person in the testator's presence."

This court, in the case of *Meek* v. *Bledsoe,* 221 Ark. 395, 253 S. W. 2d 369, used language which we think is applicable here. In holding that it was not necessary to the validity of a will to show it was read by the testator before he signed it, the court quoted with approval:

"It is sufficient if the court is satisfied by competent evidence that the contents of the will were known to and approved by him. Where a will, written in the presence of the testator according to his dictation, is executed according to the statute, it is valid though not read to or by him."

"The doctrine as stated by the English cases on this point is illuminating, *viz.*: 'If a person has given instructions to a solicitor to make a will, and the solicitor prepares it in accordance with those instructions, all that is necessary to make a good will, if executed by the testator, is that he should be able to think thus far, "I gave my solicitor instructions to prepare a will making a certain disposition of my property. I have no doubt

that he has given effect to my intention, and I accept the document which is put before me as carrying it out.' ''

In the case under consideration the record shows, in addition to what is heretofore set forth, that the testator had talked with the attorney who wrote the will and had paid him for writing it, that he actually signed the instrument which is now conceded to be his will, and that he talked to others later about having made the will. All this, we think, leaves no doubt that the will was properly executed in compliance with the statute. Certainly in the absence of any showing to the contrary, we must say that the court's finding is supported by the weight of the evidence.

*Two.* In our opinion the record supports the finding of the Probate Court that W. M. Tatum was competent to execute his will. Mr. Tatum who was approximately 83 years old when he signed his will on March 31, 1954 and lived about 3 years thereafter. It is true that he had been in feeble health for a few years, that he was in bed at his home when he signed, and that he entered the Arkansas Baptist Hospital on April 5th or 6th, 1954. At that time Dr. Autry examined him, and later testified that Tatum's condition was very poor, that he was not mentally alert, and that in his opinion Tatum was not mentally competent on March 31, 1954 to execute the will. On cross-examination however he stated ''I cannot say that W. M. Tatum did not know what he was signing when he executed his will on March 31, 1954.'' The testimony of Dr. Brown was much the same as that of Dr. Autry except there was no qualifying statement on cross-examination. There was also lay testimony to the effect that Tatum did not recognize some of his neighbors from time to time.

On the other hand there was somewhat convincing evidence that Tatum was competent to execute the will. James C. Verdier, minister of the First Penecostal Church, testified that he had known Tatum since 1938, that Tatum was a friend but not a member of his church; that he visited him often — once just about the time the

will was signed; that he talked with Tatum, and he appeared to be very rational, and; that Tatum discussed the matter of the will with him in 1955. Dr. John W. Ashby, in substance, stated: I had known Tatum for 15 years, and treated him frequently during that time; I examined him the day the will was signed and he was suffering from uremia; I had been treating him for this disease several years; W. M. Tatum was mentally clear when I examined him, (the day the will was executed) he knew what he was doing and was capable of making a will. In addition to the above it was shown that Tatum was up and around visiting neighbors and transacting business after the will was signed.

We have frequently said that the test of mental capacity to execute a will is that the testator must be able to retain in mind without prompting the extent and condition of his property, to comprehend to whom he was giving it, and relations of those entitled to his bounty. See: *McWilliams* v. *Neill,* 202 Ark. 1087, 155 S. W. 2d 344; *Parette* v. *Ivey, Executor,* 209 Ark. 364, 190 S. W. 2d 441, and; *Shippen* v. *Shippen,* 213 Ark. 517, 211 S. W. 2d 433.

The burden of proving mental incapacity rests upon the one who seeks to prove it. See: *Parette* and *Shippen, supra,* and *Gray* v. *Fulton,* 205 Ark. 675, 170 S. W. 2d 384; *Jones* v. *National Bank of Commerce,* 220 Ark. 665, 249 S. W. 2d 105, and; *Thiel, Adm.* v. *Mobley,* 223 Ark. 167, 265 S. W. 2d 507.

*Three.* The Probate Judge found no undue influence was exercised to induce the execution of the will, and again we think this finding was justified by the evidence. Appellants admit that they carry the burden of proving undue influence, but say this burden was met by showing appellee was the prime beneficiary and that she helped in preparing for its execution. Due to this circumstance, they say, more strict proof was required of appellee, citing *McDaniel* v. *Crosby,* 19 Ark. 533. The rule alluded to however does not relieve appellants of the burden of proof. In fact there is no direct evidence

in the record of undue influence on the part of appellee or anyone else. The fact that appellee received under the will a larger portion of the estate than each of the appellants is not alone convincing or even significant. First, because the testator had a right to dispose of his property as he saw fit, and secondly, the discrepancies are partially justified at least by gifts previously made to some of his children.

Affirmed.