## WARGO *v.* WARGO.

5-895                                        287 S. W. 2d 882

Opinion delivered March 12, 1956.

*Rose, Meek, House, Barron & Nash,* for appellant.

*DuVal L. Purkins,* for appellee.

LEE SEAMSTER, Chief Justice. On June 10, 1952, Andrew Wargo, Sr., died testate survived by his widow, Victoria Wargo, and Timothy, Percy and Andrew, Jr., his three adult sons and his sole heirs at law. Until their father's death, Percy and Andrew, Jr., were unmarried. Timothy was married and had two minor sons, Timothy Wargo, Jr., and Andrew Wargo, III. Bessie Ann McCreary Bryan was a niece of Mrs. Victoria Wargo and she had lived in the home of Mr. and Mrs. Andrew Wargo, Sr.

Prior to his death, Andrew Wargo, Sr., executed his last will and testament on December 31, 1949, in the presence of Judge James M. Smith, and his son, Robert M. Smith, both attorneys at law. E. E. Hopson, another attorney at law, assisted Judge James Smith in the preparation of Wargo's will. After its execution by Wargo, the will was placed in a sealed envelope, endorsed: "Last Will and Testament of Andy Wargo." Thereafter, at Wargo's request, Judge Smith delivered this instrument to the probate clerk of Desha County for deposit. The clerk accepted the instrument and gave a receipt for it. Two carbon copies of this will, that had been duly executed by Wargo, were retained by Judge Smith and E. E. Hopson.

Shortly after Wargo's death, the probate clerk notified the widow and each of the heirs and beneficiaries that the will was in his custody. Within 30 days there-

after, the widow, three sons and niece of Andrew Wargo, Sr., met with attorneys, Judge James Smith and E. E. Hopson, in a room adjoining the office of the probate clerk. The probate clerk opened the envelope containing the will and Attorney Hopson read the context of the instrument to all parties present. At this time, the two carbon copies of the will that had been duly executed by Wargo were produced by the two attorneys, and were given to members of the Wargo family during the reading. After the will was read, the probate clerk was asked to return to the room, the will was replaced in its envelope and the clerk was instructed to retain the will in his custody until further notice, where the will was retained until the trial of this case.

On October 16, 1952, Timothy Wargo filed the will for probate. Thereafter, on December 15, 1952, Percy and Andrew Wargo, Jr., filed objection to the probation of the will. The will was duly admitted to probate as the Last Will and Testament of Andrew Wargo, Sr., on June 28, 1955. From the order probating the will is this appeal.

For reversal, the appellants set out the following points:

I

Andrew Wargo's will resulted from the undue influence exercised by Timothy Wargo and is, therefore, invalid.

II

Andrew Wargo was incompetent at the time he made the will in question and the will, therefore, is invalid.

III

The integrity of the purported will in question was destroyed and the will, therefore, was not entitled to probate.

(a) The envelope containing the will deposited with the Probate Clerk shows conclusively on its face that the will offered for probate was not the will originally deposited with the Clerk.

(b)   The envelope containing the will was not opened by the Probate Court, as required by statute.

(c)   Deposit of a will is not required by statute, but if compliance with the statute is attempted, then the statute must be strictly followed.

(d)   The will bears evidence on its face that it is not in the form which the testator finally understood that he was signing.

The evidence reveals that Judge James Smith prepared a will for Andrew Wargo, Sr., on September 5, 1946, in which Wargo devised the following: To his widow he left all of his cattle; to his two grandchildren, Timothy, Jr., and Andrew III, he left 160 acres of land in Section 16; to his wife's niece, Bessie Bryan, he left $500 in cash; to his three sons, Percy, Andrew, Jr., and Timothy, he left the residue of his estate, both real and personal, share and share alike.   Wargo also directed that his estate be held in trust for a period of ten years after the death of his wife and also directed that the farming operations on his property be continued as therebefore conducted and the earnings or losses be shared on an annual basis, among his three sons.

The 1949 will provides in substance as follows:

First.   Directs the payment of debts.

Second.   Devises to his wife, Victoria Wargo, a life estate in the S 1/2 of the S 1/2 of Section 14, Township 10 South, Range 1 West, west of the river and north of the section line road, with the remainder to Andrew Wargo, III, and Timothy Wargo, Jr., with the direction that the land be not sold, pledged or mortgaged until the younger shall have arrived at the age of 35 years.

Further bequeaths to his wife all his cattle and the proceeds of a life insurance policy of $2,000.

Third.   Devises to Tim Wargo the N 1/2 of the N 1/2 of Section 23, Township 10 South, Range 1 West, west of the river and south of the section line road, subject to a life estate in a tract of land 300 feet north and south by 450 feet east and west in his widow and three sons.

Further devises to Tim Wargo the N 1/2 of the S 1/2 of Section 16, Township 1 South, Range 1 West, and the SE 1/4 of Section 15, west of the section line road.

Fourth. Devises to Andrew Wargo, III, and Timothy Wargo, Jr., equally, the S 1/2 of the S 1/2 of Section 16, to be held intact until the younger one is of lawful age.

Fifth. Devises to Andrew Wargo, Jr. and Percy Wargo, equally, the SW 1/4, the S 1/2 of the NW 1/4 of Section 10, Township 10 South, Range 1 West; the SE 1/4, the S 1/2 of the NE 1/4 of Section 9, Township 10 South, Range 1 west; the NE 1/4, the E 1/2 of the NW 1/4 of Section 16, Township 10 South, Range 1 West; the NE 1/4 of Section 15 north of the section line road; and the NW 1/4 of Section 15, Township 10 South, Range 1 West.

Sixth. Gave to Tim, Andrew and Percy equally the bulldozer and its equipment and a sawmill located on the SE 1/4 of Section 15, Township 10 South, Range 1 West.

Seventh. Gave to Andrew and Percy equally all farm implements and machinery, except as above given, including all tractors and other farm machinery and equipment, except that the shop and blacksmith shop equipment should be available equally to all sons and to his widow.

Eighth. Gave a life estate to the three sons and to his widow in a tract of land 300 feet north and south by 450 feet east and west in the N 1/2 of the N 1/2 of Section 23, Township 10 South, Range 1 West, in the building, shop and repair equipment thereon.

Ninth. Devises to Andrew Wargo, III, and Timothy Wargo, Jr., subject to the life estate of his widow, and S 1/2 of the S 1/2 of Section 14, Township 10 South, Range 1 West, west of the river and north of the section line road, with the direction that it be not sold, pledged or mortgaged until the youngest shall have arrived at the age of 35 years.

Tenth. Gave to Bessie Anne Bryan the sum of $500.

Eleventh. Gave residue to his widow.

Twelfth. Nominated his widow executrix without bond, and in the alternative, his sons as joint executors.

Executed by Andy Wargo on December 31, 1949, with the regular attestation clause signed by Robert M. Smith and James M. Smith, as witnesses.

There was no testimony in the record to show that Timothy Wargo had exercised any undue influence upon the deceased, in regard to the preparation of the will, or that he had any knowledge of its contents until it was opened by the probate clerk and was read to the family. Due to the lack of evidence, we cannot say that Timothy exercised undue influence upon the deceased to procure the execution of the will.

In regard to appellants' second point, that the deceased was incompetent at the time he made the will in question, there was not sufficient evidence of record to support the appellants' allegations. In fact the preponderance of the evidence shows that the deceased was of clear mind, mentally alert, had a knowledge of his properties and a concern for the deserts of his loved ones. The burden of showing lack of mental capacity and undue influence in making the will rests upon the appellants. They failed to do so in this case. *Werbe* v. *Holt,* 218 Ark. 476, 237 S. W. 2d 478; *Simpson* v. *Burge,* 216 Ark. 132, 224 S. W. 2d 830.

Finally, we can find no merit in appellants' third point. The testimony shows that the deceased, after long deliberation and consultation with his attorneys, executed this will by signing all of its pages and showed his approval to all of the terms and conditions of the will. Judge James Smith testified that at the direction of the deceased, he deposited this will with the probate clerk sometime in the early part of January of 1950 and he paid the clerk one dollar and received a receipt for the will. This receipt was delivered to the deceased. The probate clerk testified that Judge Smith deposited

this will with him on or about the eleventh day of January, 1950. The clerk also testified that he wrote on the envelope containing the will these words, "Delivered by Judge James Smith, July 18, 1949." The clerk offered as explanation for inserting the wrong date on the envelope, the fact that he had in his vault at that time the will of another party, upon which he had endorsed the same date, July 18, 1949. The proof conclusively shows that the will in question was filed with the probate clerk sometime in January, 1950.

The proof shows that the probate clerk opened this will in the presence of the parties. After the reading of the will by the attorneys, the will was replaced in the envelope and custody was retained by the probate clerk until introduced in evidence.

Section 60-415, Ark. Stats. 1947, pp., provides that the probate clerk, who is the custodian of the probate records, shall act as a depository for anyone who may wish to leave his will with him for safe keeping. Should the clerk and the parties comply with all the provisions of this section of the probate code, it would, no doubt, be helpful in establishing the validity and integrity of a will so deposited with the clerk. The failure of the clerk or the parties to comply strictly with all the provisions of this section in handling the will would not necessarily destroy its integrity.

In this case two duly executed carbon copies of the will in question were furnished to the parties at the time the will was opened by the clerk and read to the parties by one of the two attorneys who had prepared the will for the deceased. Due proof of the execution of the will was made by the subscribing witnesses, and the evidence of the attorneys who prepared the will and who also deposited it with the probate clerk establishes the validity and integrity of the will beyond doubt.

We find that the probate court properly admitted the will to probate. The case is affirmed.

Justice GEORGE ROSE SMITH not participating.